UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -:
ZAKUNDE-ZE HANDBERRY, et al.,          :        96 Civ. 6161 (GBD) (JCF)
                                       :
          Plaintiffs,                  :            REPORT AND
                                       :            RECOMMENDATION
     - against -                       :
                                       :
WILLIAM C. THOMPSON, JR., et al.,      :
                                       :
          Defendants.                  :
- - - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

This litigation focuses on deficiencies in the education provided to school-eligible inmates held in New York City jails. Originally filed in 1996, the case progressed through several years of litigation, after which the district court granted a declaratory judgment in favor of the plaintiffs, Handberry v. Thompson, 92 F. Supp. 2d 244 (S.D.N.Y. 2000) ("Handberry I"), and, later, an injunction ordering certain defendants (various New York City officials, the New York City Board of Education ("DOE"),[1] the New York City Department of Correction ("DOC"), and the City of New York (collectively, the "City Defendants")) to implement procedures to bring the educational services at the Rikers Island prison complex into compliance with state and federal law, Handberry v. Thompson, 219 F. Supp. 2d 525 (S.D.N.Y. 2002) ("Handberry II"). In 2006, the Second Circuit vacated the injunction in part and remanded the case to the district court to re-evaluate and, if necessary, reform the injunction consistent with its opinion.

---

[1] The New York City Board of Education has been renamed the New York City Department of Education. A.R. ex rel. R.V. v. New York City Department of Education, 407 F.3d 65, 67 n.2 (2d Cir. 2005).

Handberry v. Thompson, 446 F.3d 335 (2d Cir. 2006) ("Handberry III").

On remand, after an initial flurry of activity, including attempts to settle the action, the case lay fallow. Now, approximately nine years after the plaintiffs initially sought entry of an amended injunction, the case has re-emerged. For the following reasons, I recommend granting the plaintiffs' motion in part and entering an amended injunction.

Background

A.   Proceedings in the District Court

This case was filed in August 1996. The plaintiff class consisted of "school age inmates (inmates between the ages of 16 and 21 years) who are held in 16 DOC jails." Handberry I, 92 F. Supp. 2d at 245. They sued pursuant to a number of federal statutes, including the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its regulations; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and its regulations; New York State statutes and regulations; and the federal and New York State Constitutions. Handberry I, 92 F. Supp. 2d at 245. In early 2000, ruling on the plaintiffs' motion for a declaratory judgment (and the City Defendants' cross-motion for partial summary judgment), the Honorable Constance Baker Motley, U.S.D.J., found that the plaintiffs had presented "uncontradicted evidence that many class members received no educational services for significant lengths of time. As particularly egregious examples, plaintiffs have put forward unrefuted evidence that

2

hundreds of adolescent inmates held in special housing areas . . . received absolutely no schooling during many semesters." Id. at 248. Similarly, the court found that the "substantial number of class members [who] suffer from learning disabilities[,] rendering their educational entitlements subject to the IDEA as well as New York laws governing special education," were deprived of "any special education services." Id. at 248-49. It therefore granted the plaintiffs' motion for a declaratory judgment "establishing the City defendants' liability for failure to provide adequate general and special educational services to class members at the facilities on Rikers Island."[2] Id. at 249.

Thereafter, Judge Motley "reluctantly approved" the City Defendants' remedial plan "for providing full and complete educational facilities and services to all eligible Rikers Island inmates," noting that it was "deficient in many respects." Handberry II, 219 F. Supp. 2d at 530. The court therefore appointed a monitor to observe the workings of the plan for one year. Id. The parties' submissions and the monitor's final report "[made] clear that the City defendants continue[d] to fail to meet their obligations under state and federal law." Id. The court issued an injunction adopting amendments to the remedial plan that

> ordered, inter alia, that the defendants implement
> procedures to notify inmates of the education services

---

[2] The declaratory judgment (and the later injunction) was directed at the provision of services only at Rikers Island jails because those are the only jails at which the City of New York provides educational services. Inmates at other DOC jails "must transfer to a Rikers Island jail to receive such services." Handberry III, 446 F.3d at 347.

3

> available, take steps to provide general education services to all entitled inmates, provide escorts to enable inmates to attend class, comply with the terms of the IDEA in providing special education services, and provide "cell study" to students in segregated housing.

Handberry III, 446 F.3d at 340-41.  The injunction was intended to bring the education services at the facilities into compliance with both federal and state law.  Handberry II, 219 F. Supp. 2d at 533. Judge Motley also reappointed the monitor for an additional term of two years, to expire at the end of August 2004.  Id. at 546.

B.    Appeal

The City Defendants appealed the district court's judgment. The Second Circuit vacated the injunction and remanded the case to the district court to consider whether Porter v. Nussle, 534 U.S. 516 (2002), which was decided after the district court issued its decision, required the plaintiffs to exhaust administrative remedies.  Handberry III, 446 F.3d at 341.  The district court concluded that no further exhaustion was required, and reinstated the earlier injunction.  Id.  The City Defendants again appealed. The Second Circuit affirmed in part, vacated in part, and remanded. The Court of Appeals held that Section 802 of the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1), limits the availability of prospective relief in prisoner litigation to that remedying violations of federal, but not state, law.  Id. at 344-46.  That is, the PLRA "prohibits a federal court from issuing preventive relief based entirely on state-law claims."  Id. at 346 (footnote omitted).  In addition, the Court of Appeals found that certain provisions of the injunction were not sufficiently targeted

4

to satisfy the PLRA's requirement that relief be "narrowly drawn, . . . necessary . . ., and []the least intrusive means [] to correct the violation of the Federal right."   18 U.S.C. § 3626(a)(1)(A); see Handberry III, 446 F.3d at 348-51.  The court therefore "vacate[d] the judgment of the district court insofar as its injunction appears to be based exclusively on state law," affirmed most of the provisions aimed at violations of federal law, and remanded the case to the district court to determine whether nine identified paragraphs of the injunction "are based primarily on state law or federal law" and limit the injunction to those provisions "necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  Id. at 356 (quoting 18 U.S.C. § 3626(a)(1)(A)).

Two aspects of the Court of Appeals' opinion are of particular import here.  First, the court recognized that the City Defendants must follow the procedures of the IDEA in screening inmates, developing Individual Education Plans ("IEPs") and Special Education Plans ("SEPs"),[3] and implementing those plans for eligible inmates.  Handberry III, 446 F.3d at 347-51.  Second, the court recognized that eligible inmates have a due process right to the "minimum number of hours [of schooling] required by the [state] regulations."  Id. at 355.  The plaintiffs had argued that they possessed a "property interest in a public education and [] that

---

[3] According to the City Defendants, they formerly referred to Special Education Plans as Temporary Education Plans ("TEPs"). (City Defendants' Objections to the Special Master's Report ("City Def. Obj.") at 17).

the defendants ha[d] deprived them of their property interest without due process of law." Id. at 352. The court first noted that "the relief sought by the plaintiffs -- that the defendants provide them with substantive educational services -- hardly seems well suited to remedy a procedural violation," but refused to delve further into the question because "the plaintiffs do not possess a property interest in any particular educational conditions." Id. Rather, examining state statutes and regulations, the Court of Appeals held that "only a complete lack of education or one 'wholly unsuited' to the statutory goals constitutes a deprivation of a property interest" in a public education. Id. at 355. Rejecting the plaintiffs' request for more robust injunctive relief, the court affirmed the paragraph of the original injunction requiring the City Defendants to "continue to provide the regulatory minimum of fifteen hours per week of instruction." Id. at 355.

C.   Post-Remand Proceedings in the District Court

The Second Circuit's mandate issued in May 2006, after the case had been reassigned to the Honorable Deborah A. Batts, U.S.D.J. Judge Batts recused herself in February 2007, and the case was reassigned to the Honorable George B. Daniels, U.S.D.J. The parties' briefing on the plaintiffs' motion for an order modifying the injunction was completed in November 2007. Between May 2008 and September 2008, both Judge Daniels and I held a series of settlement conferences with the parties, which were ultimately unsuccessful.

In October 2013, Judge Daniels referred the case to me to

issue a report and recommendation on the pending motion for an order modifying the injunction.  The parties disagreed as to the changes the lapse of time had worked on the provision of educational services at Rikers Island.  The City Defendants contended that because "every member of the plaintiff class has had access to educational services in jail every school day," the action should be dismissed (Letter of Janice Birnbaum dated Jan. 13, 2014 ("City Def. 1/13/14 Letter")), while the plaintiffs asserted that because "plaintiffs continue to be denied educational services while incarcerated," the proposed amended injunction should be entered and a monitor appointed (Letter of Roberto Finzi and Mary Lynne Werlwas dated Feb. 28, 2014 ("Pl. 2/28/14 Letter") at 2).  In light of the parties' widely divergent views, as well as the staleness of the record on which Judge Motley based her original injunction, I ordered the parties to begin the process of choosing a Special Master and outlining the scope of his assignment.  (Order dated March 31, 2014).

The parties jointly recommended Peter E. Leone, Ph.D., and in June 2014, I appointed him as Special Master pursuant to Rule 53(a)(1)(C) of the Federal Rules of Civil Procedure and the Court's inherent authority.  (Order dated June 10, 2014 ("6/10/14 Order"), ¶¶ 2-3).  The order appointing Dr. Leone described the contours of his task, listing four major issues of inquiry and linking them to the specific provisions of the original injunction.  (6/10/14 Order, ¶ 6).  Rather than limiting the scope of his review to facts relating to the provisions in the original injunction that were

vacated and remanded, the order included in Dr. Leone's mandate the responsibility to investigate and report on facts relating to provisions that the Second Circuit affirmed as based primarily on federal law.[4]  (6/10/14 Order, ¶ 6).

The Special Master submitted a report on January 30, 2015 (the "Original Report"), and, after reviewing the City Defendants' objections, submitted an amended report on May 11, 2015 (the "Amended Report"), along with a memorandum responding to the objections (Memorandum of Peter E. Leone dated May 11, 2015 ("Amended Report Memo.") at 1-2).  In the interim, the plaintiffs submitted an amended proposed order setting out "the more limited relief that [they] believe the Court's injunction should include" in light of  the Original Report.  (Letter of Roberto Finzi and Dori Lewis dated March 31, 2015 ("Pl. 3/31/15 Letter"), at 2; Proposed Order, attached as Exh. to Pl. 3/31/15 Letter).  The City Defendants opposed the entry of the Proposed Order, arguing that "there are no federal law violations in this 18-year old stale case."  (Letter of Janice Birnbaum dated May 27, 2015 ("City Def. 5/27/15 Letter") at 1).  The parties then engaged in another series of meetings and exchanges of proposals attempting to settle the litigation.  These were, as before, unsuccessful.

---

[4] Although the City Defendants objected to certain aspects of the order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Judge Daniels overruled their objections.  (Memorandum and Order dated Sept. 8, 2014, at 2-3).

Discussion

A.   Objections to the Special Master's Reports

As noted above, the City Defendants objected to the Original Report. They did not, however, file objections to the Amended Report, but instead chose to oppose the plaintiffs' Proposed Order. Given this failure to object (or renew previously interposed objections), I am not required to review the Amended Report de novo. See Fed. R. Civ. P. 53(f)(3) ("The court must decide de novo all objections to findings of fact made or recommended by a master" unless otherwise stipulated). Nevertheless, I will review the City Defendants' objections to the Original Report in light of the Amended Report and the Special Master's memo.

1.   Objection No. 1

The City Defendants contend that I should reject the Special Master's finding that eligible inmates do not have access to three hours of educational services each school day. (City Def. Obj. at 8). The Original Report states that "most students who are in school receive less than three hours of class time each day." (Original Report at 5). In his memorandum, the Special Master acknowledges that "16 and 17 year old adolescent students have access to education for the minimum of three hours per day." (Amended Report Memo. at 3). The Amended Report now indicates that 16 to 17 year olds have access to the three hour minimum of educational services and generally receive it, even in light of late arrival to class. (Amended Report at 5 & n.16; Declaration of Francis Torres dated March 31, 2015 ("Torres Decl."), ¶ 11).

As to 18 to 21 year olds (also termed "adult eligible inmates"), who state law "entitle[s], but [does] not require[]" to receive schooling, Handberry I, 92 F. Supp. 2d at 248, the Amended Report notes that "school is scheduled in two three[-]hour blocks; students attend morning or afternoon sessions" (Amended Report at 5). However, some of these students fail to receive three hours of services because, for example, "attending school conflict[s] with institutional jobs that enable[] students to earn money" or they are not always called to school. (Amended Report at 6-7, 13). In addition, the Amended Report asserts that some students stated that they were not allowed to take school work to their cells, although the City Defendants insist that there is no such restriction. (Amended Report at 6 & n.18; Torres Decl., ¶ 24).

The City Defendants object that these concerns do not "deprive[] an adult eligible inmate of his or her right to attend class while incarcerated." (City Def. Obj. at 11). However, the Special Master does not conclude that these inmates are "deprived . . . of [the] right to attend class"; rather, he asserts that the institutional factors he has identified interfere with students receiving three hours of instruction per school day. This conclusion is supported by Dr. Leone's observations, interviews, and review of documents. This objection is overruled.

2. Objection No. 2

This objection is directed to the Special Master's discussion of "cell study," which is provided to students in punitive segregation by supplying packets of written work for students to

complete. (Amended Report at 7; City Def. Obj. at 13). The Amended Report notes that most of the students Dr. Leone interviewed in the punitive segregation unit did not complete the packets sent to them and complained that the phone which allows them to contact instructors was often unavailable. (Amended Report at 7-8). Dr. Leone asserts that no student in restrictive housing assigned to "cell study" receives three hours of educational services per school day. (Amended Report at 13). The City Defendants object because (1) the Second Circuit vacated a number of the provisions of the original injunction dealing with cell study, leaving intact only one dealing with the provision of education to those in punitive segregation who require special education; (2) "a City Board of Correction rule change precludes confining adolescents to punitive segregation"; and (3) the adult eligible inmates with disabilities in punitive segregation are offered cell study, which is all the special educational service to which they are legally entitled. (City Def. Obj. at 13-15). They ask that "the portions of [the] report that criticize cell study and [Dr. Leone's] opinion on its efficacy and efficiency should be stricken from the report," reasoning that "[h]is opinion was not part of his duties as special master and is legally irrelevant." (City Def. Obj. at 14).

The Amended Report does not reach conclusions about the legal sufficiency of cell study or the scope of the Second Circuit's remand; if it did, I would discount those opinions in my ultimate recommendation. And the fact that the City of New York has decided

11

not to place adolescents in punitive segregation is not a reason to strike Dr. Leone's findings of fact, given that such a rule is of relatively recent vintage and might change in the future.

Finally, the argument that the Special Master's opinions should be stricken because opinions are outside his mandate is frivolous. Dr. Leone was appointed because of his expertise in the relevant areas of special education and education of incarcerated juveniles. (6/10/14 Order, ¶¶ 3-4). He was charged to "collect and _evaluate_ facts relating to the provision of educational services to DOC inmates between the ages of 16 and 21." (6/10/14 Order, ¶ 6 (emphasis added)). No party has argued that Dr. Leone is unqualified to express an opinion in these areas under Rule 706 of the Federal Rules of Evidence, nor would such an argument be credited, as he was "recommended jointly by the plaintiffs and the City [D]efendants." (6/10/14 Order, ¶ 3). I will weigh his opinions appropriately in my ultimate recommendation. This objection is overruled.

### 3.   Objection No. 3

The City Defendants object to certain factual errors that they admit are immaterial to the Special Master's conclusions. (City Def. Obj. at 16). Dr. Leone has corrected these errors in the Amended Report. (Amended Report Memo. at 1-2). The objection is overruled.

### 4.   Objection No. 4

The City Defendants characterize certain of Dr. Leone's observations and opinions as "gratuitous" and ask that they be

stricken.  (City Def. Obj. at 18-20).  For the reasons outlined above in response to the City Defendants' previous objection to Dr. Leone's opinions, this objection is overruled.

     5.   Objection No. 5

Finally, the City Defendants object to any observations made by the Special Master as to portions of the injunction that were vacated by the Second Circuit but not remanded.  (City Def. Obj. at 20-21).  As they observe, they have "repeatedly objected to the Court's consideration of any arguments" pertaining to such provisions.  (City Def. Obj. at 20).  Previous iterations of this argument have not succeeded.  See, e.g., Handberry v. Thompson, No. 96 Civ. 6161, 2014 WL 4470535, at *2 (S.D.N.Y. Sept. 8, 2014). This most recent one fails as well because, as discussed below, the City Defendants misunderstand the workings of the Second Circuit's mandate in this case.

    B.   The Mandate Rule

The decretal paragraphs of the Second Circuit's opinion vacate a number of provisions of the original injunction because they are based on state law; vacate one provision because it is excessively burdensome, another because it violates a provision of the IDEA, and a third because it "makes little sense" under the circumstances of the case; affirm a number of provisions because "they enjoin conduct that appears to be based primarily on federal statutory law"; and remand the case to determine which of nine identified provisions in the original injunction "are 'necessary to correct the violation of the Federal right of a particular plaintiff or

plaintiffs.'"  Handberry III, 446 F.3d at 356 (quoting 18 U.S.C. 3626(a)(1)(A)).  One of the fundamental disagreements among the parties is the extent of this Court's authority to amend the injunction in light of the Second Circuit's mandate.  That is, are the City Defendants correct that my recommendations (and Judge Daniels' ultimate decision) are limited to evaluation of the conduct enjoined in the nine provisions of the original injunction that the appellate court expressly remanded?  That is too crabbed a view of this Court's duty and authority.

The "mandate rule," a subsidiary precept of the law-of-the-case doctrine, explains "that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court."  Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006) (quoting United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993)).  The rule works to "prevent[] re-litigation in the district court not only of matters expressly decided by the appellate court, but also . . . of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  Burrell, 467 F.3d at 165 (quoting United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  The district court "must always look to the opinion to interpret the mandate."  APL Co. v. Blue Water Shipping U.S. Inc., 779 F. Supp. 2d 358, 366 (S.D.N.Y.

2011) (quoting <u>Meacham v. Knolls Atomic Power Laboratory</u>, 358 F. App'x 233, 235 (2d Cir. 2009) (summary order)).

Where there is "'a dramatic change in controlling legal authority' or 'significant new evidence that was not earlier obtainable through due diligence but has since come to light,' a district court may depart from the dictates of the mandate." <u>Bronx Household of Faith v. Board of Education of City of New York Community School District No. 10</u>, 855 F. Supp. 2d 44, 64 (S.D.N.Y. 2012) (quoting <u>United States v. Webb</u>, 98 F.3d 585, 587 (10th Cir. 1996)). Similarly, "[t]he power of a district court to modify its past injunctive relief to accommodate changed circumstances is well established." <u>Association Against Discrimination in Employment, Inc. v. City of Bridgeport</u>, 710 F.2d 69, 74 (2d Cir. 1983) (collecting cases).

Here, all participating parties agree that there have been significant changes since the time that the injunction was originally entered. But even so, there is no need to "depart from the dictates of the mandate" here. Instead, both the letter and the spirit of the mandate allow the Court to craft relief ensuring that the City Defendants comply with federal law, even if that relief involves modification of vacated provisions of the original injunction.

The Second Circuit held that "the district court was not permitted to order prospective relief to remedy [] asserted violation[s] of state law only," and therefore "vacate[d] those portions of the injunction . . . that appear to be based solely on

15

asserted violations of state law." Handberry III, 446 F.3d at 346. It then recognized the authority of a federal court to remedy violations of federal law as long as the prospective relief satisfied the "need-narrowness-intrusiveness" restrictions of the PLRA, noting that an appropriate remedy "may require more than the bare minimum [federal law] would permit" if it "provides a practicable 'means of effectuati[on]'" of the relief. Id. at 346-47 (alterations in original) (quoting Benjamin v. Fraser, 343 F.3d 35, 54 (2d Cir. 2003), abrogated on other grounds by Caiozzo v. Koreman, 581 F.3d 63 (2d Cir. 2009)). The bulk of its discussion concerning relief for violations of federal law focused on the requirements of the IDEA. Handberry III, 446 F.3d at 347-51. The court also held that the Constitution required the City Defendants to "continue to provide the regulatory minimum of fifteen hours per week of instruction." Id. at 355. It was thus in the larger context of ensuring that the City Defendants complied with federal law that the Court of Appeals dissolved some provisions, affirmed some, and remanded others.

Of course, the mandate rule would prohibit mere resurrection of the vacated injunctive paragraphs -- the Second Circuit was clear that those provisions as written enjoined conduct that violated state law alone. However, in tandem with the responsibility to monitor the injunction and adapt it to changed circumstances, it is clear that this Court has the authority to amend the injunction to remedy violations of federal law beyond those enjoined by the specific provisions remanded by the Second

Circuit.  Indeed, the Court is not prohibited even from modifying the vacated provisions, as long as the amended provision is directed at conduct that violates federal law or effectuates relief directed at ensuring compliance with federal law.  The mandate both allows and requires this.

C.    Proposed Amended Injunction

The plaintiffs' Proposed Order consists of eleven paragraphs. The City Defendants object to each of them.

1.    Paragraph No. 1

"Eligible inmates" are inmates 21 years of age or younger who are confined at Rikers Island and who do not have a high school diploma or G.E.D.

The plaintiffs assert that this paragraph "simply recites the definition of the class."  (Letter of Roberto Finzi and Dori Lewis dated June 22, 2015 ("Pl. 6/22/15 Letter"), at 5).  The City Defendants protest, however, that the "definition . . . is wrong as a legal matter," given that under state law various considerations are required to determine whether an inmate may receive educational services, such as the length of time the inmate has been incarcerated (at least ten days) or is likely to be incarcerated (at least ten or more calendar days plus twelve school days). (City Def. 5/27/15 Letter at 2).

The original injunction did not include a definition of "eligible inmates."   Indeed, Judge Motley rejected such a provision, stating that the evidence did not indicate that such a definition was necessary.  See Handberry II, 219 F. Supp. 2d at 533.  That continues to be true.  There is no evidence that the

17

City Defendants fail to identify inmates who are eligible for educational services.  I therefore recommend eliminating this provision.

2.    Paragraph No. 2

> All eligible inmates shall receive a minimum of 3 hours of educational services every school day.  Nothing in this Order shall be construed to prohibit DOE from providing additional services or more hours of instruction than this minimum requirement.

The City Defendants concede that the first sentence of this paragraph replicates paragraph 8 of the original injunction, which the Second Circuit affirmed.  (City Def. 5/27/15 Letter at 3); Handberry III, 446 F.3d at 355.  They appear to object even to this sentence, however, because "there is no evidence to show that DOE fails to offer at least 3 hours of educational services to all eligible inmates able to access educational services in a classroom setting."  (City Def. 5/27/15 Letter at 3).  There are two reasons that this objection fails.  First, the Second Circuit required the City Defendants to provide a minimum number of hours of education to all eligible inmates, not only those "able to access educational services in a classroom setting."  See Handberry III, 446 F.3d at 355; (Reply Memorandum of Law in Support of Plaintiffs' Proposed Order Modifying the Existing Injunction at 13-14).  The Special Master found that "[n]one of the students in restrictive housing assigned to cell study receives three hours of education services," and the plaintiffs have submitted recent declarations that support

18

this observation.[5]  (Amended Report at 13; Declaration of Anthony D. dated Feb. 19, 2014 ("Anthony D. Decl."), attached as Exh. C to Pl. 2/28/14 Letter, ¶¶ 14-15; Declaration of Derrick S. dated Feb. 20, 2014, attached as Exh. D to Pl. 2/28/14 Letter, ¶¶ 8-9; Declaration of Jose H. dated Feb. 28, 2014, attached as Exh. K to Pl. 2/28/14 Letter, ¶ 7).  Second, even if the Special Master had not made this finding, the sentence would be appropriate. Handberry III left the original injunction's similar provision intact in the face of the plaintiffs' "conce[ssion] that the defendants have provided the minimum number of hours required by the regulations."  446 F.3d at 355.  It did so in order to "ensur[e] that the defendants continue to provide the regulatory minimum of fifteen hours per week of instruction."  Id.  The City Defendants have not established that such insurance is no longer necessary.

The City Defendants' objection to the second sentence -- which is, as they observe, "new" -- seems to be merely that, as it was not included in the original injunction, it was not affirmed by the Second Circuit.  (City Def. 5/27/15 Letter at 3).  But I am flummoxed as to why they would bother to oppose the sentence, given that they have boasted that they currently provide more than the minimum weekly hours of education, at least for adolescents attending school in a classroom setting.  (City Def. 5/27/15 Letter at 3).  The sentence does not require anything of the City

---

[5] The plaintiffs also submit declarations from 2006.  These are not sufficiently probative regarding the conditions at Rikers Island in the present.

Defendants; it merely makes clear that they are not limited to providing only the minimum required by the Due Process Clause of the Constitution.

Of course, that also means it is largely unnecessary. The first sentence of the proposed provision requires "a minimum of 3 hours of educational services." (Proposed Order, ¶ 2). The plaintiffs are afraid that the sentence might be "misunderstood to limit the educational services that can be provided." (Pl. 6/22/15 Letter at 6). Perhaps such a misunderstanding would be more likely if the sentence read, "All eligible inmates shall receive the minimum of 3 hours of educational services every school day." Perhaps the intended meaning would be slightly clearer if the sentence read, "All eligible inmates shall receive at least 3 hours of educational services every school day." But it would require a good deal of concentrated misprision for the sentence as written to be understood in the manner feared by the plaintiffs. Because it is neither "'necessary' to correct the violation" nor does it "provide[] a practicable 'means of effectuati[on]'" of a remedy, Handberry III, 446 F.3d at 346 (alterations in original) (quoting Benjamin, 343 F.3d at 54), I recommend striking the second sentence of this paragraph.

3.    Paragraph No. 3

> Placement in a restricted housing unit does not change an eligible inmate's entitlement to educational services under any provision of this Order.

According to the plaintiffs, access to educational services for these inmates "has been a longstanding problem" documented in

20

declarations from class members submitted to the Court in 2014, and mentioned in the Amended Report. (Pl. 6/22/15 Letter at 6; Amended Report at 7-8, 12-13). The City Defendants oppose this provision, pointing to its similarity to paragraph 40 of the original injunction, which the Second Circuit vacated as "based solely on state law." (City Def. 5/27/15 Letter at 4); Handberry III, 446 F. 3d at 356; Handberry II, 219 F. Supp. 2d at 550.

As noted above, the mere fact that Handberry III vacated a provision as based on state law does not mean that a modified version of the provision re-directed at violations of federal law is similarly inappropriate. Here, the provision was incorporated into the section of the original injunction entitled "Cell Study." Handberry II, 219 F. Supp. 2d at 550. Judge Motley ordered the provisions in that section (paragraphs 39-45), id. at 550-51, to ensure that the City Defendants lived up to the commitments included in their Education Plan, submitted approximately one month after the declaratory judgment was issued, id. at 530, 544-45. That is, the section as a whole, which focused on regulating a method of instruction, was not explicitly directed to violations of federal law.

This particular provision, however, reaffirms the Second Circuit's constitutional ruling that eligible inmates have a property right in the minimum number of hours of educational services per week, whether they are in the general population or in restricted housing. It also ensures the rights of inmates in restricted housing to receive services pursuant to the IDEA. As

noted in the section above, there is evidence in the record that those in restricted housing do not receive the minimum number of hours of educational services per week.  Similarly, there is evidence that certain inmates in need of special education services do not receive them.  (Amended Report at 7, 12-13; Anthony D. Decl., ¶¶ 14-15, 17).  This paragraph should therefore be retained.

        4.   <u>Paragraph No. 4</u>

> DOC shall notify each newly eligible inmate as soon after arrival at Rikers Island as possible of his or her right to educational services.

The City Defendants object to this provision, reasoning that it is based on paragraphs 3 and 4 of the original injunction, which were vacated in <u>Handberry III</u> as based on state law.  (City Def. 5/27/15 Letter at 4); <u>Handberry III</u>, 446 F.3d at 356; <u>Handberry II</u>, 219 F. Supp. 2d at 546.  Paragraphs 3 and 4 of the original injunction were significantly more complex, requiring compliance with the City Defendants' proposed Education Plan and additionally requiring production of a videotape on the educational services offered to be shown "at DOC's new admissions orientation to all newly admitted inmates under 22 years of age."  <u>Handberry II</u>, 219 F. Supp. 2d at 546.  The newly-proposed paragraph merely requires that inmates get notice of educational services.  This is not based on state law; rather, it is a simple directive that will help DOE to provide educational services to eligible inmates.  <u>See Handberry III</u>, 446 F.3d at 346 (PLRA allows remedy requiring more than minimum demanded by federal law in order to effectuate relief).

The City Defendants' second objection is well-taken, however.

They assert that there is no evidence that inmates are not advised of their right to educational services.  Adolescent inmates are automatically registered for school if they cannot show they have graduated from high school.  (City Def. 5/27/15 Letter at 4 n.2; Amended Report at 4).  Adult eligible inmates receive information about educational services at their orientation and in the Inmate Handbook. (City Def. 5/27/15 Letter at 4; Amended Report at 9; Declaration of Tonya Threadgill dated March 31, 2015 ("Threadgill Decl."), ¶ 22; Torres Decl., ¶ 16; Excerpts from Inmate Handbook, attached as Exh. C to Torres Decl., at 16).  To be sure, it appears that a large majority of adult eligible inmates do not take advantage of the educational services offered.  (Amended Report at 2-3).   However, there is no evidence that this is due to DOC's failure to inform them of the education available; indeed, the Special Master seems to agree that eligible inmates receive notice of available educational services.  (Amended Report at 9).   I recommend striking this paragraph as unnecessary.

5.    Paragraph No. 5

> Unless stated explicitly to the contrary, any and all requirements set forth in this Order shall apply to all of the schools, programs and methods of instruction operated by DOE in DOC facilities.

The City Defendants note that this paragraph corresponds to paragraph 6 of the original injunction, which the Second Circuit affirmed.  (City Def. 5/27/15 Letter at 5); Handberry III, 446 F.3d at 356; Handberry II, 219 F. Supp. 2d at 546.  They protest that "DOE does not operate schools in DOC facilities[;] DOE only operates school programs in DOC facilities."  (City Def. 5/27/15

Letter at 5).

This is a hyper-technical gripe about labeling that is not even clearly borne out in the City Defendants' own submissions. Although both the principal of the East River Academy -- which is the name of the entity that provides educational services on Rikers Island -- and the Executive Director of Educational Services for DOC state that the East River Academy is a "program" run by DOE, the principal also repeatedly refers to it as a "school," and the Executive Director states that "DOC provides school officers to maintain security and order in all [East River Academy] school areas."  (Threadgill Decl., ¶¶ 1, 16-18; Torres Decl., ¶¶ 1, 5 (emphasis added)).  Including the word "schools" -- which was also included in the affirmed provision from the original injunction -- makes this provision less likely to be misunderstood by those unfamiliar with DOE's terminology.

> 6.    Paragraph No. 6

> Jail programs, including work assignments, legal services, religious services, health care, or recreation shall not be scheduled at the same time as educational services.

> The original injunction contained the following provision:

> DOC shall ensure that the provision of basic jail services does not conflict with the school schedule. Each facility's schedule of activities, programs and services shall be organized so that no eligible inmate who participates in educational services is denied the opportunity also to participate in the following programs or services because of attendance at educational instruction: 1) recreation, 2) legal services, 3) religious services, 4) visitation, and 5) health services.

Handberry II, 219 F. Supp. 2d at 547.  Judge Motley imposed this

requirement, reasoning that state law prohibits denying an inmate who chooses to participate in educational services the opportunity to engage in such activities because of a scheduling conflict. Id. at 537 (citing N.Y Comp. Codes R. & Regs. ("NYCRR") tit. 9, § 7070.6(c)). The proposed provision adds "work assignments" to the list of protected activities, presumably because the Special Master found that some adult eligible inmates failed to attend school because it conflicted with their participation in "institutional jobs that enabled students to earn money." (Amended Report at 6).

Any order entered in this case should ensure not only that the City Defendants provide eligible inmates with at least the minimum educational services required by federal law, but also that obstacles do not make these services unreasonably difficult to access. See Handberry III, 446 F.3d at 346 (PLRA allows remedy requiring more than minimum demanded by federal law in order to effectuate relief). However, as cases like Handberry III demonstrate, the PLRA's "need-narrowness-intrusiveness" requirement is not toothless. See also Benjamin, 343 F.3d at 53-55 (rejecting injunctive provisions for failure to comply with PLRA).

The proposed provision is both overbroad and overly intrusive. It goes beyond what is required even by state law by including restrictions on work assignments. By its terms, it prohibits the scheduling of a wide variety of activities whenever school is in session. It is not even targeted at those who attend school, but appears to apply across the board to all programming at facilities housing school-eligible inmates. And there is no evidence that

these restriction are operationally feasible.

A significantly narrowed provision, ensuring that participation in educational services does not foreclose inmates' rights to access to the courts, to participate in religious services or recreation, or to receive health care -- all of which are federally protected in the prison context, see, e.g., Lewis v. Casey, 518 U.S. 343, 350 (1996) (access to courts); 42 U.S.C. § 2000cc-1 et seq. (Religious Land Use and Institutionalized Persons Act); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (religious observance); Estelle v. Gamble, 429 U.S. 97, 103 (1976) (medical care); Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985) (opportunity for exercise) -- might be appropriate. However, there is no evidence that any of these activities interfere with scheduled educational services (perhaps because such interference is prohibited by state law). I therefore recommend striking this provision.

### 7. Paragraph No. 7

> DOC shall ensure that each eligible inmate is provided access to educational services consistent with ¶ 2 above in a timely manner, including if necessary providing escorts for travel to and from his or her place of educational instruction.

The City Defendants again argue that this provision should not be ordered because it is based on state law, hearkening back to a similar provision in the original injunction that the Second Circuit vacated. (City Def. 5/27/15 Letter at 5); Handberry III, 446 F.3d at 356; Handberry II, 219 F. Supp. 2d at 547. Again, that argument fails.

26

Provision of a minimum amount of educational services means little if they cannot be accessed.  Certain inmates at Rikers Island are not allowed to move freely through their facility; to access the offered educational services, they must be escorted. (City Def. Obj. at 12).  There is evidence in the record that supports Dr. Leone's finding that some students miss school because of a lack of escorts.  (Amended Report at 9 n.31; GRVC-PM Sign In Sheet dated Oct. 28, 2014, attached as Exh. to Amended Report, at 1; Daily Call Down List dated Oct. 28, 2014, attached as Exh. to Amended Report, at 1-2; City Def. 5/27/15 Letter at 5).  Thus, there is a factual basis for the imposition of this requirement.

### 8.    Paragraph No. 8

DOC shall house together all eligible youth between the ages of 18 and 21.

This paragraph is neither mandated by federal law, nor appropriate as a means to effectuate relief.  Although housing all eligible 18 to 21 year-olds together might well "increase the rate of enrollment as well as the average daily attendance" (Amended Report at 15), as Judge Motley observed, "maximization of enrollment is not the business of the court," Handberry II, 219 F. Supp. 2d at 534.

The plaintiffs argue that the DOC "has proposed such housing to the Board of Correction, precisely to facilitate programs including educational services."  (Pl. 6/22/15 Letter at 7; Pl. 3/31/15 Letter at 9 & n.12).  But DOC's assessment that such an arrangement is possible or advantageous does not make it any less intrusive when ordered by a federal court.

27

9.    Paragraph No. 9

Inmates who are disabled and identified as in need of special education or related services shall receive such services, including when placed in a restricted housing unit or method of instruction. If necessary, an IEP or SEP may be modified in accordance with 20 U.S.C.A. § 1414(d) and 34 C.F.R. § 300.324, consistent with legitimate penal objectives. In the event this occurs, such modifications shall be the least restrictive necessary to accommodate the security needs of the jail.

This is a near verbatim restatement of a provision affirmed in Handberry III. 446 F.3d at 356 (affirming paragraph 44 of original injunction); Handberry II, 219 F. Supp. 2d at 551. The only difference is the applicability to inmates in restricted housing units. The City Defendants point this out, but do not appear to argue that this difference is material.[6] (City Def. 5/27/15 Letter at 6).

The Special Master found evidence that eligible inmates in segregated units were not "receiving services as specified in their SEPs." (Amended Report at 7, 12). Thus, the record establishes that there is a factual basis for the entry of this paragraph of the injunction.[7]

---

[6] In an earlier submission, the City Defendants argued that "[t]here is a good reason" that the original provision did not mention restricted housing, because state law "expressly permits [the] City Defendants to mark 'legally absent' any eligible inmate in disciplinary detention." (The City Defendants' Memorandum of Law in Opposition to Plaintiffs' Amended Application for an Amended Injunction ("City Def. Memo.") at 18). That argument is not pressed in its more recent submission. Even if it were, the City Defendants do not explain how that state law provision trumps the Second Circuit's ruling that eligible inmates are entitled to a minimum number of hours of educational services per week. Handberry III, 446 F.3d at 355.

[7] For reasons that elude me, the parties' submissions regarding this provision devolve into an debate concerning cell

10.  <u>Paragraphs No. 10 and 11</u>

These paragraphs appoint Dr. Leone as a monitor for a two-year term; provide for his access to the correctional facilities, plaintiffs, and defendants; and set forth arrangements for his compensation and reimbursement.  (Proposed Order, ¶¶ 10-11).

The City Defendants should be commended for the progress they have made in ensuring eligible inmates have access to educational services in compliance with federal law.  However, approximately nine years after the Second Circuit issued its decision in <u>Handberry III</u>, there are still inmates who are not receiving even the minimum services to which they are entitled.  In these circumstances, it is prudent and appropriate to appoint a monitor to assess the City Defendants' compliance with federal requirements going forward.  Dr. Leone, assuming he is amenable, is a suitable choice, not only because of his expertise, but also because of his familiarity with this case.  I therefore recommend including these paragraphs in the order issued.

D.  <u>Termination of Relief</u>

The City Defendants have repeatedly insisted that the prospective relief granted in this case should be terminated. (City Def. Memo. at 9-10; City Def. 1/31/14 Letter; City Def. 5/27/15 Letter at 1).  The PLRA entitles a defendant to termination

---

study.  (City Def. 5/27/15 Letter at 6; Pl. 6/22/15 Letter at 7-8). This provision does not mention cell study.  However, if a student's IEP or SEP could be implemented using that method, and if cell study could guarantee that student's access to the minimum required hours of education, this paragraph would allow it; if cell study could not meet those requirements, this paragraph would prohibit it.

of prospective relief "in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(b)(2), (3).  As the discussion above should make clear, I recommend accepting the first sentence of paragraph 2 and the entirety of paragraphs 3, 5, 7, 9, 10 and 11 as satisfying these strictures.  Termination is therefore inappropriate at this time.

<u>Conclusion</u>

For the foregoing reasons, I recommend adopting the plaintiffs' proposed order in part as discussed above and as set out in the accompanying appendix.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, Room 1310, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 2, 2015

Copies transmitted this date to:

Roberto Finzi, Esq.
Ross Weingarten, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Mary Lynne Werlwas, Esq.
Dori Lewis, Esq.
The Legal Aid Society
199 Water Street, 6th Floor
New York, NY 10038

Janice Birnbaum, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

Antoinette Blanchette, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271

Dr. Peter E. Leone
3112-D Benjamin Building
Department of Counseling,
     Higher Education & Special Education
College of Education
University of Maryland
College Park, MD 20742

## Appendix

1.  All eligible inmates shall receive a minimum of 3 hours of educational services every school day.

2.  Placement in a restricted housing unit does not change an eligible inmate's entitlement to educational services under any provision of this Order.

3.  Unless stated explicitly to the contrary, any and all requirements set forth in this Order shall apply to all of the schools, programs and methods of instruction operated by DOE in DOC facilities.

4.  DOC shall ensure that each eligible inmate is provided access to educational services consistent with ¶ 2 above in a timely manner, including if necessary providing escorts for travel to and from his or her place of educational instruction.

5.  Inmates who are disabled and identified as in need of special education or related services shall receive such services, including when placed in a restricted housing unit or method of instruction. If necessary, an Individualized Education Plan ("IEP") or Special Education Plan ("SEP") may be modified in accordance with 20 U.S.C.A. § 1414(d) and 34 C.F.R. § 300.324, consistent with legitimate penal objectives.  In the event this occurs, such modifications shall be the least restrictive necessary to accommodate the security needs of the jail.

6.  The Court appoints Dr. Peter E. Leone to continue as the Court's expert and monitor to serve a two-year term from the time of appointment.  The monitor will assess the DOE and DOC's compliance with this Order and provide the court and counsel with annual reports specifically identifying any areas of noncompliance.  Dr. Leone in his reports may also recommend specific changes in DOE and DOC policies and procedures.

7.  Dr. Leone shall continue to have the same access to Rikers Island, to plaintiffs and defendants, and to relevant documents, as well as the same arrangement for compensation and reimbursement of expenses, as set forth in the Court's June 10, 2014 Order.