UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ZAKUNDA-ZE HANDBERRY, et al.,                                      :
                                                                   :
                   Plaintiffs,                                :   96 Civ. 6161 (GBD)
                                                                   :
    against                                                      :
                                                                   :
WILLIAM C. THOMPSON, JR., et al.,                                  :
                                                                   :
                  Defendants.                                :
                                                                   :
                                                                   :
                                                                   :
                                                                   :
                                                                   :
------------------------------------------------------------------ x


## MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION TO PARTIALLY TERMINATE PROSPECTIVE RELIEF

 

Roberto Finzi
Daniel Stone
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Dori A. Lewis
Mary Lynne Werlwas
Stefen Short
THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT
199 Water Street
New York, NY 10038
(212) 577-3530

*Attorneys for Plaintiffs*

# **Table of Contents**

I.     Preliminary Statement ...................................................................................................1

II.    The PLRA Precludes Granting a Termination Motion On this Record...................4

       A.     The Facts in the Record Do Not Establish the Current Conditions. ............5

              1.     Dr. Leone's Second and Third Report No Longer Reflect
                     Current Conditions for the Plaintiff Class. .....................................5

              2.     Plaintiffs Have Numerous Objections to the Second and
                     Third Report.......................................................................................6

III.   Plaintiffs are Entitled to Discovery and to Demonstrate at a Hearing that
       there are Current and Ongoing Violations of Their Federal Rights. ......................7

IV.    The "DOE" Cannot Be Excised as A Defendant When the City
       Continues to Deny Plaintiffs Their Educational Rights. .........................................9

       A.     Dr. Leone's Reports Demonstrate Non-Compliance, and thus
              Preclude Termination..................................................................................9

       B.     Dr. Leone's Report Does Not Describe Current Conditions for the
              18 to 21 Year Old Students........................................................................11

       C.     DOE is a Necessary Party for Relief. ........................................................13

       D.     The Court Should Postpone the Automatic Stay of 3626(e)(2)(A)
              for good cause.  18 U.S.C. § 3626(e)(3)...................................................13

V.     Conclusion ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Benjamin* v. *Horn*,
   353 F. App'x 4735 (2d Cir. 2009) ............................................................................7, 8

*Benjamin* v. *Jacobson*,
   172 F.3d 144 (2d Cir. 1999) ...........................................................................4, 7, 9, 11

*Graves* v. *Arpaio*,
   No. CV-77-0479, 2008 WL 4699770 (D. Ariz. Oct. 22, 2008), *aff'd*,
   623 F.3d 1043 (9th Cir. 2010) ........................................................................................8

*Hadix* v. *Johnson*,
   228 F.3d 662 (6th Cir. 2000) ..........................................................................................7

*Handberry* v. *Thompson*,
   446 F.3d 335 (2d Cir. 2006) ..........................................................................................4

*Hart* v. *Agnos*,
   No. CV-77-0479, 2008 WL 2008966 (D. Ariz. Apr. 25, 2008) ....................................8

*Loyd* v. *Ala. Dep't of Corrs.*,
   176 F.3d 1336 (11th Cir. 1999), *cert. denied*, 528 U.S. 1061 (2000)...........................7

*Plata* v. *Brown*,
   No. C01-1351, 2013 WL 654996 (N.D. Cal. Feb. 21, 2013) .......................................8

*Ruiz* v. *United States*,
   243 F.3d 941 (5th Cir. 2001) .........................................................................................7

*United States* v. *Virgin Islands*,
   884 F. Supp. 2d 399 (D.V.I. 2012) ................................................................................8

*Westchester Disabled on the Move, Inc.* v. *Cty. of Westchester*,
   346 F. Supp. 2d 473 (S.D.N.Y. 2004) .........................................................................13

**STATUTES**

18 U.S.C. § 3626..............................................................................................................4, 13, 14

42 U.S.C. § 1414(d)................................................................................................................11

**RULES**

Fed. R. Civ. P. 19................................................................................................................3, 13

**OTHER AUTHORITIES**

34 C.F.R. § 300.324 ...................................................................................................11

Aliza Chasan and Dan Mannarino, *16 Correction Officers, 2 Captains Injured in Massive Brawl at Bronx Juvenile Center*, PIX 11 (Oct. 7, 2018) ..............................................................................................................6

Daily News Editorial Board, *Youthful mistakes: Raise the Age Endures Growing Pains* (Oct. 6, 2018, 4:05 AM) ..........................................................5

Department of Correction, *Young Adult Housing Monthly Progress Reports* (October 2018) .................................................................................2

Jan Ransom, *Teenagers Were Moved Off Rikers for Safety.  Their Brawls Came, Too*, N.Y. Times (Oct. 4, 2018) ...................................................5, 9

*Mayor de Blasio Announces Sea Change in Juvenile Justice as the Age of Criminal Responsibility is Raised to 18 Years Old*, City of New York (October 1, 2018) ........................................................................................1

Rosa Goldensohn, *With Rikers closure still years off, de Blasio backs away from young adult reforms*, (September 6, 2018) ...................................2

Sarah Wallace, *New Video Shows Melee in NYC Juvenile Center that Left 21 Officers Hurt*, NBC New York (Oct. 4, 2018, 6:35 PM) ..........................6

Spectrum News Staff, *Union: 18 Correction Officers Hurt Breaking Up Fight at Bronx Juvenile Facility*, Spectrum News (Oct. 7, 2018, 6:28 PM) ............................................................................................................6

Stephanie Pagones, *Juvenile Center Teacher Says Teens Have Sent Furniture Flying*, N.Y. Post (Oct. 5, 2018, 10:10 PM) ..................................5

I.       **Preliminary Statement**

On October 1, 2018, New York City implemented the "Raise the Age" statute, which changed the age of criminal responsibility in New York State. Mayor DeBlasio hailed this "sea change" as a "historic moment," because "[b]eginning today, no one under 18 will go to Rikers Island. Kids will be treated like kids instead of adults." *Mayor de Blasio Announces Sea Change in Juvenile Justice as the Age of Criminal Responsibility is Raised to 18 Years Old*, City of New York (October 1, 2018), https://www1.nyc.gov/office-of-the-mayor/news/495-18/mayor-de-blasio-sea-change-juvenile-justice-the-age-criminal-responsibility-is (Declaration of Daniel M. Stone in Support of the Plaintiffs' Memorandum of Law in Opposition to City Defendants' Motion to Partially Terminate Prospective Relief (Stone Decl.), Ex. A). Under this new law, all of the 16 and 17 year old members of the plaintiff class were moved from Rikers Island to a newly created type of youth facility, enrolled in a new high school, and subjected to new rules and supervision by the Administration for Children's Services and the Department of Correction (DOC). *Id.* The implementation has met with some challenges, and altering the factual setting of this matter with allegations of violence and mass suspensions *in the new school.* We hope and expect that the stakeholders will resolve these difficulties and make these reforms a long-term success. But for the youngest members of the plaintiff class, this "sea change" has brought unprecedented chaos and volatility in the current school year.

Concurrently, the City dramatically changed its treatment of the older class members left behind on Rikers Island—school eligible youth aged 18 to 21—by permanently closing the young adult jail in which they had principally been housed and

1

attended school.[1]  After touting their "young adult" plan and the creation of "school dorms" to group together high school-enrolled students at the George Motchan Detention Center (GMDC), the City shuttered the facility on June 30, 2018, dispersing the 18 to 21 year olds throughout the DOC system.  By the October 2018 census, these youth were now housed in over 190 separate housing areas, in 10 different jails.[2]  According to news reports, a Board of Correction member found that these youth reported they had "no access to classes" since they were moved from GMDC.  Goldensohn, *supra.* ("Board of Correction member Bryanne Hamill, a retired family court judge, toured Rikers Wednesday and was disturbed to encounter young adults who said they no longer had access to classes.  'I spoke to kids who, since they've been moved from GMDC, have not been able to attend classes and programming like in GMDC,' she said.").

In this volatile and unprecedented context, the City has ambushed the Plaintiff class with a motion to terminate all prospective relief for the 16 and 17 year old class members—even though *no* court has ever found that the City had remedied its violations of the plaintiffs' educational rights.  Motion to Partially Terminate Prospective Relief (Doc. No. 271); Memorandum of Law in Support of City Defendants' Motion to Terminate ("Motion to Terminate") (Doc. No. 272).  In support of their motion, the City Defendants rely on Dr. Leone's Second and Third Reports, which include some negative and some positive views of progress on Rikers Island—in the year *before* the City up-

---

[1] *See* Rosa Goldensohn, *With Rikers closure still years off, de Blasio backs away from young adult reforms*, (September 6, 2018), https://www.politico.com/states/new-york/albany/story/2018/09/05/with-rikers-closure-still-years-off-de-blasio-backs-away-from-young-adult-reforms-594152 (Stone Decl., Exhibit B).

[2] See Department of Correction, *Young Adult Housing Monthly Progress Report* (October 2018), https://www1.nyc.gov/assets/boc/downloads/pdf/Reports/DOC-Reports/18_yo_census_october_2018.pdf (18 year old census); https://www1.nyc.gov/assets/boc/downloads/pdf/Reports/DOC-Reports/19_21_yo_census_october_2018.pdf (19-21 year old census) (Stone Decl., Exhibit C).

2

ended the entire system. *See* Motion to Terminate at 8–10. As the City Defendants implicitly acknowledge, these Reports do not reflect the "the conditions as of the date that termination is sought." Motion to Terminate at 7 (citing *Gilmore* v. *California*, 220 F.3d 987, 1010 (9th Cir. 2002)). Under the Prison Litigation Reform Act (PLRA), they cannot form the basis for termination of relief, as they are essentially mooted by the materially changed circumstances. Rather, plaintiffs must be given an opportunity to take discovery, and present to the Court the current facts, which we believe will demonstrate that the City Defendants are engaged in a current and ongoing violation of the federal rights of the 16 and 17 year old class members.

Similarly, the Court should deny the City Defendants' oddly-styled "Motion to Terminate the Department of Education" ("DOE") as a defendant in this class action against Defendant the City of New York *about education*. The City Defendants are mistaken in claiming that the Second and Third Reports of Dr. Leone show that the DOE had cured its violation of the Plaintiffs' federal educational rights. And even if those reports could be so construed, they too have been mooted by the rapidly changing facts on which they were based. At a minimum, the Court must allow plaintiffs to discover the *current* factual record, and present those facts at an evidentiary hearing. More fundamentally, dismissing the DOE from the Court's March 31, 2016, Order requiring the City to provide education to inmates makes little intuitive sense. *See* March 31, 2016 Order (Doc. No. 250). The DOE is a necessary party, as described in Rule 19 of the Federal Rules of Civil Procedure, and simply cannot be excised from the case on a "partial" theory of termination.

## II.     The PLRA Precludes Granting a Termination Motion On this Record.

While the Prison Litigation Reform Act (the "PLRA") provides defendants with the right to file a motion to terminate prospective relief in certain circumstances (18 U.S.C. § 3626(b)(1)), termination is subject to the defendants having remedied the underlying harm. Otherwise, the PLRA mandates that "prospective relief *shall not* terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right . . . ." 18 U.S.C. § 3626(b)(3) (emphasis added). It is well settled in this circuit that this requires the Court to make written findings about the facts *now*, not six months ago. "Evidence presented at a prior time . . . could not show a violation that is 'current and ongoing.' Hence the 'record' referred to [in § 3626(b)(3)] cannot mean the prior record but must mean a record reflecting conditions *as of the time termination is sought*." *Benjamin* v. *Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999) (emphasis added).

The federal rights that the Plaintiff class of putative high school students seek to vindicate are their federal rights to an education, secured by the Individuals with Disabilities Education Act ("IDEA"), the Due Process clause of the Fourteenth Amendment, and other laws, as described earlier in this case in *Handberry* v. *Thompson*, 446 F.3d 335 (2d Cir. 2006). The guarantee of these important rights, and *not* compliance with the specific terms of a remedial order, becomes the subject of a termination hearing. And the Court is tasked with determining whether there is, at the time termination is sought, a "current and ongoing violation" of those federal rights. The Court cannot make that determination on the current factual record.

### A.     The Facts in the Record Do Not Establish the Current Conditions.

#### 1.     Dr. Leone's Second and Third Report No Longer Reflect Current Conditions for the Plaintiff Class.

On July 2, 2018, Dr. Leone filed his Third Report concerning the status of education for youth pursuant to the remedial order.  Third Report on Status of Education Services for Youth Aged 16-21 at Rikers Island ("Third Report") (Doc. No. 273-2). While the Motion to Terminate treats the Third Report as an undisputed statement of the present circumstances, such treatment belies the facts.  While the report was dated July 2, it was based upon site visits of March 15 and 16, 2018.  Third Report at 3.  Thus, the observations in the report are over six months old.  At *best*, the Third Report reflects only the circumstances long before the Motion to Terminate was filed and before the major transformations of the summer and fall of 2018.  And, clearly, Dr. Leone's Second Report, dated December 19, 2017, is only more outdated.  Second Report on Status of Education Services for Youth Aged 16-21 at Rikers Island ("Second Report") (Doc. No. 273-1).  Since the filing of the Third Report, all of the 16 and 17 year old class members have left Rikers.  This game-changing fact is not reflected in Dr. Leone's report, though it is acknowledged by the City Defendants in their Motion to Terminate.  Motion to Terminate at 3.  Yet the City Defendants expect that the Court will terminate prospective relief as to these Plaintiffs, based on the outdated Third Report.

City Defendants' transition of class members from Rikers Island to the new "specialized secure detention facility" of Horizon has been chaotic at best.[3]  As a result of

---

[3]  *See, e.g.*, Jan Ransom, *Teenagers Were Moved Off Rikers for Safety.  Their Brawls Came, Too*, N.Y. Times (Oct. 4, 2018), https://nyti.ms/2O74HKx (Stone Decl., Ex. D); Stephanie Pagones, *Juvenile Center Teacher Says Teens Have Sent Furniture Flying*, N.Y. Post (Oct. 5, 2018, 10:10 PM), https://nypost.com/2018/10/05/juvenile-center-teacher-says-teens-have-sent-furniture-flying (Stone Decl. Ex. E); Daily News Editorial Board, *Youthful Mistakes: Raise the Age Endures Growing Pains* (Oct. 6, 2018, 4:05 AM), http://www.nydailynews.com/opinion/ny-edit-raise-the-age-20181004-

several fights and skirmishes, the City Defendants were reported to have removed a significant number of adolescents from school in the new facility—a dramatic change from the status quo that prevailed on Rikers Island in the time period covered by Dr. Leone's report.[4]  There are allegations some students have been placed in "room confinement," that is, isolated confinement that had been phased out for this group years ago on Rikers Island.[5]  In the past, such confinement resulted in that youth's relegation to "cell study," a practice Dr. Leone concluded had been abandoned.  The Status of Education Services for Youth Aged 16-21 at Rikers Island (February 1, 2017) (Doc. No. 257-1) at 5.  Whether "room confinement" in the new youth facility has brought back cell study, or whether these students are still attending school—or not attending at all—is unknown, and cannot be answered by Dr. Leone's reports.

        2.        Plaintiffs Have Numerous Objections to the Second and Third Report.

The City Defendants' Motion to Terminate based upon the Dr. Leone's Second and Third Report is untimely, insofar as it is based upon Reports to which the parties have yet to file any objections.  Plaintiffs will file objections to the Report pursuant to the current schedule.  *See* Order Granting Letter Motion for Extension of Time (Doc. No. 269).  But as the Court will see, Plaintiffs' objections demonstrate that Dr. Leone's

---

story.html (Stone Decl., Ex. F); Aliza Chasan and Dan Mannarino, *16 Correction Officers, 2 Captains Injured in Massive Brawl at Bronx Juvenile Center*, PIX 11 (Oct. 7, 2018), https://pix11.com/2018/10/07/16-correction-officers-2-captains-injured-in-massive-brawl-at-bronx-juvenile-center (Stone Decl. Ex. G); Spectrum News Staff, *Union: 18 Correction Officers Hurt Breaking Up Fight at Bronx Juvenile Facility*, Spectrum News (Oct. 7, 2018, 6:28 PM), http://www.ny1.com/nyc/all-boroughs/news/2018/10/07/correction-officers-hurt-at-horizon-juvenile-center-bronx-nyc-correction-officers-benevolent-association-says (Stone Decl., Ex. H).

[4]  Sarah Wallace, *New Video Shows Melee in NYC Juvenile Center that Left 21 Officers Hurt*, NBC New York (Oct. 4, 2018, 6:35 PM), https://www.nbcnewyork.com/news/local/Horizon-Center-Juvenile-Center-Melee-Fight-NYC-New-York-495189791.html ("ACS also says the youth who were suspended from school as a result of the melee Wednesday will be provided school work packets while they're out, and ACS will work with their families to engage them again.") (Stone Decl., Ex. I).

[5]  *Id.*

6

reports cannot support the City Defendants' termination motion: in addition to suffering from deficiencies on their face, they do not provide a record of the current provision of education to the plaintiff class. Rather, the Court must allow the Plaintiffs to conduct additional discovery in order to ascertain whether there are current and ongoing violations of the Plaintiffs' federal rights, as described in greater detail below.

### III. Plaintiffs are Entitled to Discovery and to Demonstrate at a Hearing that there are Current and Ongoing Violations of Their Federal Rights.

Under firmly settled law, Plaintiffs must be afforded the opportunity to take discovery needed to ascertain current facts, and demonstrate that their educational rights are "currently" being violated. *Benjamin* v. *Horn*, 353 F. App'x 473, 474–75 (2d Cir. 2009); *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999) (en banc) ("[W]e interpret §§ 3626(b)(2) and (3), read together, to mean that, when the plaintiffs so request in response to a defendant's motion for termination, the district court *must* allow the plaintiffs an opportunity to show current and ongoing violations of their federal rights.") (emphasis added).[6] The Second Circuit has reversed the termination of a prospective relief where the district court did not provide Plaintiffs with a "meaningful opportunity" to show continuing violations of their rights, especially where the court's denial of additional discovery forced

---

[6] *Id.* ("Evidence presented at a prior time, however, could not show a violation that is 'current and ongoing.' Hence, the 'record' referred to cannot mean the prior record but must mean a record reflecting conditions as of the time termination is sought."); *Ruiz* v. *United States,* 243 F.3d 941, 950 (5th Cir. 2001) (stating "a district court should first give the parties an opportunity to present evidence regarding whether or not there are any existing unconstitutional conditions at the institution"); *Hadix* v. *Johnson*, 228 F.3d 662, 671 (6th Cir. 2000) ("Because the PLRA directs a district court to look to *current conditions*, and because the existing record at the time the motion for termination is filed will often be inadequate for purposes of this determination, the party opposing termination must be given the opportunity to submit additional evidence in an effort to show current and ongoing constitutional violations." (emphasis in original)); *Loyd* v. *Ala. Dep't of Corrs.*, 176 F.3d 1336, 1342 (11th Cir. 1999) (stating that "[i]t would read all meaning out of [§ 3626(b)(3)]" to deny the party opposing termination an opportunity to present evidence relevant to the statute's requirements), *cert. denied*, 528 U.S. 1061 (2000).

7

the Plaintiffs to rely on monitor's reports that were "too infrequent or too stale." *Benjamin* v. *Horn*, 353 F. App'x 473, 474–75 (2d Cir. 2009).

Plaintiffs thus request—and must be afforded—an opportunity to conduct additional discovery in order to present the Court with evidence of the City Defendants current and ongoing violation of Plaintiffs' federal rights. *Id.* (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (requiring a "meaningful opportunity to establish the facts.")); s*ee also Plata* v. *Brown*, No. C01-1351, 2013 WL 654996, *1 (N.D. Cal. Feb. 21, 2013) (in anticipation that termination motion will require detailed factual inquiry and given complex factual issues, reopening discovery and requiring defendants to disclose their experts and their reports at least 120 days before filing a termination motion); *United States* v. *Virgin Islands*, 884 F. Supp. 2d 399 (D.V.I. 2012) (finding various orders subject to termination for failure to make required findings as to particular relief and deciding that hearing on current conditions to be held); *Graves* v. *Arpaio*, No. CV-77-0479, 2008 WL 4699770, *passim* (D. Ariz. Oct. 22, 2008) (partly terminating relief, partly preserving or modifying relief following hearing), *aff'd*, 623 F.3d 1043 (9th Cir. 2010); *Hart* v. *Agnos*, No. CV-77-0479, 2008 WL 2008966, *4–5 (D. Ariz. Apr. 25, 2008) (evidentiary hearing required).

While the rapidly changing circumstances mean Plaintiffs have little admissible evidence regarding the education of 16 and 17 year olds in the new specialized secure detention facilities, what Plaintiffs can glean from public sources is concerning.  Public reports describe several incidents of violence in the schools, and that large numbers of students were thereafter excluded from school.  For example, on October 3, 2018, the New York Times reported that the transition of 16 and 17 year olds to Horizon was

8

accompanied with at least five violent episodes. Ransom, *supra*; *supra* n. 3. This is precisely the *wrong* time to terminate relief that secures youth their educational rights, absent a reliable factual record of current compliance. Instead, Plaintiffs must be allowed to adduce information whether eligible youth are being provided their education consistent with their federal rights.

For these reasons, Plaintiffs require additional discovery to determine whether class members are provided the education they are due under federal law. *See Jacobson*, 172 F.3d at 166. Plaintiffs anticipate that, after discovery, they will demonstrate at a future hearing that there are current and ongoing violations of 16 and 17 year olds' federal rights. If, on the other hand, discovery shows otherwise, Plaintiffs would of course consent to termination for the 16 and 17 year olds.

### IV. The "DOE" Cannot Be Excised as A Defendant When the City Continues to Deny Plaintiffs Their Educational Rights.

#### A. Dr. Leone's Reports Demonstrate Non-Compliance, and thus Preclude Termination.

Even if the Court were to determine that the Reports accurately portrayed the current situation, the Reports themselves contravene a finding that DOE could be relieved of any obligations with regard to the 18 to 21 year old class members. Dr. Leone identified repeated instances where the City was not in compliance with the Court's Order as to older class members. Dr. Leone noted that "[a]ccess to education services for the eligible population of inmates continues to be highly variable" and that not all students are provided the minimum hours of educational services. Third Report at 4–5. Dr. Leone specifically stated that because of miscommunications about school, "some [older] students who wanted to attend school were never called down or escorted to classes." Third Report at 5. Neither of Dr. Leone's reports includes facts absolving the

9

DOE of responsibility for these failures.  And indeed, to the extent either report includes particularized findings about DOE's role in ensuring students attend class, those findings demonstrate DOE is not in compliance

In particular, Dr. Leone found that the schooling provided to older students in restricted housing areas was "inadequate and not compliant" with the March 31, 2016 Order.  Third Report at 8.  Dr. Leone specifically identified that during the week of February 5–8, 2018, "one or two of six students in [restricted housing] at GVRC regularly attended classes; they received on average one to one and a half hours of instruction on the days they attended."  Third Report at 9.

Moreover, Dr. Leone found that, consistent with his December 2017 report, "students [in restrictive housing] . . . did not receive three hours of education services consistent with the Court's March 31, 2016 order."  Third Report at 9; Second Report at 9.  DOE "consistently" dismisses those young adults early.  Third Report at 9.  Dr. Leone did not explain why DOE "consistently" fails to educate certain students for a full instructional period, in clear violation of the remedial order.  He thus found DOE and DOC only "in partial compliance" with the remedial order.  Third Report at 11.  The City Defendants' claim that the DOE does not share the responsibility to ensure that students are in class on time, and are not excused early, is nonsensical and should be rejected.  *See* Motion to Terminate at 10–11.

In addition, the Reports found that DOE engages in pedagogical practices that would compromise delivery of educational services in the restrictive housing units.  The Reports found that DOE established an "informal policy of having just one of two students in [an Enhanced Supervision Housing] classroom at the same time," and in

10

certain ESH units, has chained students to desks bolted to the floor. Third Report at 10–11. No facts suggest that these restrictions are necessary, and where necessary, narrowly tailored such that they do not impede students' access to education. Yet such policies have a particularly negative effect on students with special education needs. For those students, DOE has an obvious role to play within the Committee on Special Education ("CSE"), and must ensure that interventions such as being chained to the desk are appropriate and do not violate the Individuals with Disabilities in Education Act. 42 U.S.C. § 1414(d); 34 C.F.R. § 300.324.. Neither report addresses these issues, however. Absent such factual findings, neither report supports a substantial compliance finding as to DOE.

Accordingly, the Court cannot grant the motion to terminate as to the DOE with respect to older students because Dr. Leone's Third report identified repeated instances where the DOE simply failed to ensure the students received their education.

### B. Dr. Leone's Report Does Not Describe Current Conditions for the 18 to 21 Year Old Students.

Even were the Court to conclude that Dr. Leone's Reports proved that the DOE was fully compliant with all of its obligations under the Court's Order, those facts are now stale or moot. They describe an entirely different set of circumstances than currently exist. Plaintiffs therefore must be given an opportunity to discover the *current* facts and present them to the Court before the Court can rule on the Motion. *See Jacobson*, 172 F.3d at 166.

At the outset, many of the factual findings upon which Defendants rely were simply made far too long ago to support termination *now*. For example, the Third Report bases significant conclusions on an examination of 19 Special Education Plans ("SEPs").

Third Report at 14. But these 19 SEPs were provided to Dr. Leone in April 2017, and were discussed in the December 2017 report. Second Report at 13. This review is thus *over* a year and a half old—yet the City would have it form the factual basis for termination of prospective relief under paragraph 5 of the Court's Order now. *See* Motion to Terminate at 11.

But even more significantly, the closure of GMDC and its school site materially changed the facts that Dr. Leone had reported. In both reports, Dr. Leone touts the "success houses" that were instituted at GMDC. Second Report at 6; Third Report at 5. These are housing units in which Defendants grouped young adults who enrolled in school programming—a measure plaintiffs had long sought to ameliorate the abysmally low enrollment rates for this age group. Dr. Leone found significantly improved attendance rates for students in "success houses" and ultimately recommended the expansion of the "success house" model. Third Report at 5, 16.

But after his report, GMDC closed permanently. And not only were students no longer grouped in "school dorms," but the Department abandoned its young adult cluster-model and instead dispersed this age group widely throughout the jails. *See supra* at 1–2. This is the exact *opposite* of the model that Dr. Leone lauded, essentially un-doing the limited successes he had identified. There are no reliable facts addressing the City's compliance in the post-GMDC landscape, and to what extent they have reverted to seriously failing this group of highly vulnerable potential students.

Because much has changed since the time period covered by the Monitor's Second and Third Reports, Plaintiffs must be granted discovery to determine the current facts, and given an opportunity to present them at a hearing.

### C. DOE is a Necessary Party for Relief.

Finally, the Court should not terminate prospective relief as to the DOE for the simple reason that relief against the City for denial of education simply requires the DOE's engagement. The remedial Order cannot be successfully implemented unless the DOE is subject to it. Under Federal Rule of Civil Procedure 19(a)(1)(A), a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The DOE staff are responsible for providing educational services to students at DOC facilities, Second Report at 2; Third Report at 2, and DOC staff are responsible for operating the facilities where students are housed, Second Report at 6, 11; Third Report at 12–13. Given that both the DOC and DOE must perform their duties hand-in-hand to provide educational services to students, DOE is a necessary party to afford complete relief under the Order. *See Westchester Disabled on the Move, Inc.* v. *Cty. of Westchester*, 346 F. Supp. 2d 473 (S.D.N.Y. 2004) (where Westchester County had not provided ADA-compliant voting facilities, local municipalities were a necessary party under Rule 19(a)(1)(A) because the municipalities had control over local voting facilities).

### D. The Court Should Postpone the Automatic Stay of 3626(e)(2)(A) for good cause.  18 U.S.C. § 3626(e)(3)

Plaintiffs require more than 30 days from the filing of the motion to terminate in order to ascertain the current conditions of education for the plaintiff class. Dr. Leone's report, regardless of the merits of his findings, addressed at best the City Defendants' compliance at Rikers Island and GMDC, where Plaintiffs are no longer held. As a result, Plaintiffs need time to obtain information regarding the status of plaintiffs' education rights under the new model.

13

The Court has the authority, under 18 U.S.C. § 3626(e)(3), to postpone the automatic stay of § 3626(e)(2)(A) for up to 60 days for good cause.  The Court should postpone the automatic stay because good cause exists given Plaintiffs' need to conduct discovery after the City Defendants transferred Plaintiffs to a wholly new type of correctional facility, subject to another agency's supervision.  It would be premature for the March 31, 2016 Order to be stayed before providing Plaintiffs with an opportunity to determine whether Plaintiffs' rights are being violated.  As a result, the Court should postpone the automatic stay for 60 days because Plaintiffs have demonstrated good cause.

**V.      Conclusion**

For the foregoing reasons, the Court should (1) grant plaintiffs the right to conduct discovery to determine whether there are any current and ongoing violations of federal rights concerning the provision of education to the plaintiff class;  (2) deny the City Defendants Motion to Terminate the DOE as a defendant; and (3) postpone the automatic stay for 60 days while the Plaintiffs are conducting discovery.

Dated:  New York, New York
           October 26, 2018

                                        Respectfully submitted,

                                        PAUL, WEISS, RIFKIND, WHARTON
                                          & GARRISON LLP

                                        By: /s/ Roberto Finzi
                                              Roberto Finzi
                                              Daniel M. Stone

                                        1285 Avenue of the Americas
                                        New York, New York  10019-6064
                                        (212) 373-3000

Dori A. Lewis
Mary Lynne Werlwas
Stefen Short
THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT
199 Water Street
New York, NY 10038
(212) 577-3530

*Attorneys for Plaintiffs*