UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ZAKUNDA-ZE HANDBERRY, et al.,             :
                                          :
                    Plaintiffs,           :   96 Civ. 6161 (GBD)
                                          :
            against                       :
                                          :
WILLIAM C. THOMPSON, JR., et al.,         :
                                          :
                    Defendants.           :
                                          :
                                          :
                                          :
                                          :
------------------------------------------------------------------X


**PLAINTIFFS' OBJECTIONS TO DR. PETER LEONE'S SECOND AND THIRD
MONITORING REPORTS**


        Stefen R. Short
        Dori A. Lewis
        Mary Lynne Werlwas
        THE LEGAL AID SOCIETY
        PRISONERS' RIGHTS PROJECT
        199 Water Street
        New York, NY 10038
        (212) 577-3530


        Roberto Finzi
        Daniel Stone
        PAUL, WEISS, RIFKIND, WHARTON
        & GARRISON LLP
        1285 Avenue of the Americas
        New York, New York 10019-6064
        (212) 373-3000


        *Attorneys for Plaintiffs*

# Table of Contents

I.     Introduction ....................................................................................................................2

II.    The Reports' Findings Concerning Education in Restricted Housing Units Are Not
       Supported by Evidence....................................................................................................4

III.   The Facts Contradict The Finding that the Youth Held Off Rikers Island are Transferred to
       Rikers to Attend School. .................................................................................................6

IV.    The Reports do Not Support the Finding that Defendants Consistently Provide Special
       Education and Related Services to Eligible Students Pursuant to a Valid Special Education
       Plan..................................................................................................................................8

V.     Due to Changed Circumstances, the Reports Fail to Show that Defendants Are Compliant
       With the Remedial Order. .............................................................................................10

I.      **Introduction**

On October 1, 2018, the day New York City implemented the "Raise the Age" statute, the City Departments of Education and Correction commenced a major redesign of the education programs for incarcerated students ages 16 and 17. Along with their transfer to the new joint Specialized Secure Detention Facility ("SSD"), these students were transitioned into a wholly new education setting. For all of its other flaws, the environment to which many youth were accustomed—East River Academy at the Robert N. Davoren Complex on Rikers Island—provided predictability and routine. By contrast, the education setting at the SSD introduced volatility and chaos in the middle of an academic year. SSD students have been expected to rapidly adjust to a new setting, new rules, and even the presence of a new agency, the Administration for Children's Services. Advocates, policymakers, and community activists have endorsed this reform as indicative of the City's commitment to treat kids like kids. Although we support this reform and remain optimistic about its prospects, City Defendants' erratic transition has at least temporarily endangered the educational future of these already vulnerable members of the plaintiff class.

Public reports have largely focused on reform for 16 and 17 year olds, but remaining members of the plaintiff class—18 to 21 year old incarcerated students—have been left behind on Rikers Island to cope with their own rapid transition. City Defendants have upended schooling for these students by closing the jail in which they were principally housed, scattering students across 190 different housing units in 10 different city jails. The status of the City's "youth plan" and the current state of schooling for these youth is uncertain.

Merely *three days before* this wholesale redesign, City Defendants moved to terminate a lion's share of the prospective relief in this lawsuit. *See* Motion to Partially Terminate Prospective Relief (Doc. No. 271); Memorandum of Law in Support of City Defendants' Motion

2

to Terminate ("Motion to Terminate") (Doc. No. 272); March 31, 2016 Order (the "Remedial Order") (Doc. No. 250).  To support their motion, City Defendants rely on Dr. Peter Leone's Second and Third Monitoring Reports, both of which contain mixed reviews of Defendants' compliance with the Remedial Order.  *See* Second Report on Status of Education Services for Youth Aged 16-21 at Rikers Island ("Second Report") (Doc. No. 273-1); Third Report on Status of Education Services for Youth Aged 16-21 at Rikers Island ("Third Report") (Doc. 273-2). Contrary to City Defendants' representations, major portions of these Reports demonstrate City Defendants' mixed record of compliance with the remedial order.  The Reports reveal that even before their wholesale redesign, Defendants failed to provide the minimum required hours of education to students ages 18 to 21, failed reliably to escort those students to class on time, and all but neglected the educational rights of those students who were confined to restricted housing areas.

Other portions of Dr. Leone's Reports, however, overstate the status of City Defendants' compliance.  Plaintiffs now object to those portions of Dr. Leone's Reports, which contain unsubstantiated and at times clearly erroneous findings of substantial or partial compliance. Significant segments of both Reports are replete with conclusory statements, unsubstantiated factual findings, and assumptions.  Other segments indicate Dr. Leone's flawed methodology. And in other areas, both Reports simply quote City Defendants' *policy* without an analysis of City Defendants' *practice* and whether it supports a substantial or even a partial compliance finding.

Due to these major shortcomings, Dr. Leone's Reports are unreliable even for a snapshot of City Defendants' practices *six months ago*.  When considered against the backdrop of a major change and transition in an already protean city jail education system, Dr. Leone's Second and

3

Third Reports are minimally probative of Defendants' compliance, if at all.  Therefore, the Court should disregard several portions of Dr. Leone's Second and Third Reports as outlined below.

## II. The Reports' Findings Concerning Education in Restricted Housing Units Are Not Supported by Evidence

Paragraph two of the Remedial Order states that:

Placement in a restricted housing unit does not change an eligible incarcerated person's entitlement to educational services.

This provision was largely intended to address the longstanding problem of providing school to children held in a variety of settings outside general population, such as protective custody units with special commingling restrictions, disciplinary confinement, or administrative segregation. The City has experimented with many models for providing school in these units, from cell study to allowing students confined in such units to attend school separately from the general population.  In both his Second and Third Reports, Dr. Leone finds these programs compliant with paragraph two of the Remedial Order as they apply to adolescents, but not yet compliant with respect to students aged 18 to 21.  Second Report at 8–9; Third Report at 11.

The findings with respect to adolescents must be rejected, because the Reports are devoid of facts concerning City Defendants' educational practices in adolescent restrictive housing units.  In both Reports, Dr. Leone assesses City Defendants' compliance with this portion of the order in a few short sentences.  *See* Second Report at 8; Third Report at 8.  Neither Report includes *any* detailed facts concerning City Defendants' provision of education in the Transitional Restorative Unit ("TRU"), Mental Observation Units ("MOU"), or Protective Custody ("PC"), where numerous adolescents have been housed.  And neither Report even mentions another restrictive housing unit – the Second Chance Housing Unit ("SCHU").  Dr. Leone does find that City Defendants provided services to adolescents in restrictive units that

4

were "similar" or "comparable" to those provided outside restrictive housing. Second Report at 8; Third Report at 8. However, Leone provides no factual data to support that conclusion.

Dr. Leone's explanation of his methodology is not detailed. Dr. Leone reportedly assessed City Defendants' compliance with paragraph two of the Remedial Order as to adolescents by visiting units and observing classes. Second Report at 8; Third Report at 11. No specifics are given, however, regarding what classes Dr. Leone attended, what information he derived from those visits, and how that information supports his substantial compliance finding. Furthermore, Dr. Leone provides no information about whether he interviewed students or reviewed records.

Moreover, as noted above, since Dr. Leone submitted the Third Report, all adolescents have been transferred from the Rikers Island facilities described in Dr. Leone's Reports to the SSD. Given this unprecedented change in circumstances, the facts introduced in Dr. Leone's Reports about restrictive housing units are irrelevant.

The factual record remains unclear in what respects the City Defendants have replicated restricted housing at the SSD. Policy makes clear, however, that youth can be placed in room confinement without any limit on duration.[1] One public report indicates that City Defendants have replicated certain restricted housing units at the SSD.[2] Another report indicates that after a skirmish in one such unit less than a week after the transition, many class members were removed from education programming.[3] Some of those students are reportedly receiving

---

[1] City of New York Administration for Children's Services, *Room Confinement Policy for Secure Detention, Interim Policy in Effect* (2018), https://www1.nyc.gov/assets/acs/policies/init/2016/B.pdf.

[2] Aliza Chasan & Dan Mannarino, *16 Correction Officers, 2 Captains Injured in Massive Brawl at Bronx Juvenile Center*, PIX 11 (Oct. 7, 2018, 6:47PM), https://pix11.com/2018/10/07/16-correction-officers-2-captains-injured-in-massive-brawl-at-bronx-juvenile-center/ (Stone Decl., Ex. G (Doc. No. 279-7)).

[3] Sarah Wallace, *New Video Shows Melee in NYC Juvenile Center that Left 21 Officers Hurt*, NBC NEW YORK (Oct. 4, 2018, 6:35 PM), https://www.nbcnewyork.com/news/local/Horizon-Center-Juvenile-Center-Melee-Fight-NYC-New-York-495189791.html ("ACS also says the youth who were suspended from school as a result

5

schooling through cell study packets, which were eliminated for adolescents on Rikers Island.[4]

The lack of current facts on this point precludes a substantial compliance finding.

Without a thorough examination of these changed circumstances, neither the parties nor the Court has a basis for assessing City Defendants' compliance with paragraph two of the Remedial Order with respect to 16 and 17 year old students.

### III. The Facts Contradict The Finding that the Youth Held Off Rikers Island are Transferred to Rikers to Attend School.

Paragraph three of the Remedial Order requires that:

[A]ny and all requirements set forth in the Order shall apply to all of the schools, educational programs, and methods of instruction operated by the Department of Education in Department of Correction facilities.

This provision is intended in part to remediate City Defendants' failure to consistently provide three hours schooling to young people regardless of whether they are housed in a jail without a physical school, or in a jail off Rikers Island, such as the Brooklyn Detention Center or the Manhattan Detention Complex. The record in this case, made over decades, demonstrates that eligible youth's dispersal in City jails without a physical school has caused many of those eligible youth to miss out on schooling. *See, e.g.*, Pl. Letter to Judge Francis, Feb. 28, 2014 (Doc. Nos. 192-3 to 11, Exs. C–K). In both his Second and Third Reports, Dr. Leone finds substantial compliance with paragraph three of the Remedial Order. Both Reports simply quote City *policy* – not its practice. And the facts revealed by the Reports themselves about the City's practice preclude a finding of substantial compliance.

---

of the melee Wednesday will be provided school work packets while they're out, and ACS will work with their families to engage them again.") (Stone Decl., Ex. I (Doc. No. 279-9)).

[4] *Id.* In a 2002 opinion in this case, the late Judge Constance Baker Motley characterized cell study as a "pathetic level of educational services" finding that "[m]any compulsory-age students were provided with no instruction at all" and that "[n]o special education or related services were provided to inmates in cell study programs." *Handberry v. Thompson*, 219 F. Supp. 2d 525, 545 (S.D.N.Y. 2002).

First, Dr. Leone finds that five students did not receive education over the span of a year while housed in North Infirmary Command ("NIC"), a specialized facility for people needing medical care and those subject to various forms of administrative segregation. Second Report at 10; Third Report at 11. Dr. Leone first encountered these students during his March 2017 visit to Rikers Island. According to City Defendants, these students refused education. Second Report at 10; Third Report at 11. Dr. Leone's Second and Third Reports indicate that he did not take any steps to verify City Defendant's explanation that these students had in fact refused. The Reports do not state that he interviewed these youth or examined their refusal forms. They instead indicate he accepted City Defendants' self-serving justification for why those students were not enrolled in school. The omission of any information indicating that Dr. Leone verified the proffered reason that five students missed education for a year-long period undermines any conclusion that the city is substantial compliance.

Similarly, Dr. Leone finds in his Reports that 26 of 37 young adults who requested schooling while they were held in the City jails off Rikers Island (*e.g.*, Brooklyn House of Detention, Manhattan House of Detention) were not transferred to Rikers Island for education programming. Second Report at 10; Third Report at 12. The Reports implied that some of those 26 students left City custody, but did not state how many. *See* Second Report at 10; Third Report at 12. Apart from that finding, the Report gives no cogent explanation of why over 70% of prospective students who had in fact requested education were not provided with it. *See* Second Report at 10; Third Report at 12. There are no interviews with the students who sought enrollment, nor any analysis of their records. These facts strongly contradict a compliance finding.

Finally, Dr. Leone reports that teachers informed him that a student did not receive education programming for several months after being transferred to West Facility. Third Report at 11. The West Facility is a small facility that has become a *de facto* isolation unit in the last few years, where individuals are held in separate cells with little programming or congregate activity. Dr. Leone does not indicate he followed up on that information or even asked teachers why they did not provide this student with education programming at West Facility. Here, too, this information should have been taken into account prior to a finding of substantial compliance but was not.

Dr. Leone also fails to provide *any* factual basis for his conclusion that eligible inmates are not placed in jails without educational services. In his Second Report, Dr. Leone concludes his assessment of City Defendants' compliance with paragraph three of the Remedial Order by simply quoting DOC Directive # 3503, Inmate Access to Board of Education Services. Second Report at 10. In his Third Report, Dr. Leone ends with an utterly conclusory statement that "[f]ailure to place eligible inmates in jails with services occurs but in my estimation it is not a systemic problem." Third Report at 12. This negligible analysis is insufficient to support a substantial compliance finding.

The recent removal of the 16 and 17 year old students to the SSD should address this issue with respect to that age group, since all such youth will be held in one facility. But for 18 to 21 year olds housed off Rikers Island, the absence of any facts showing that DOC transferred them to Rikers to attend school preclude a finding of compliance.

**IV.    The Reports do Not Support the Finding that Defendants Consistently Provide Special Education and Related Services to Eligible Students Pursuant to a Valid Special Education Plan.**

The provision of the special education services mandated by federal law is a centerpiece of the Remedial Order. Paragraph five of the Remedial Order states that:

8

> Inmates who are disabled and identified as in need of special education or related services shall receive such services, including when placed in a restricted housing unit or method of instruction. If necessary, an Individualized Education Plan ("IEP") or Special Education Plan ("SEP") may be modified in accordance with 20 U.S.C. § 1414(d) and 34 C.F.R. § 300.324, consistent with legitimate penal objectives. In the event this occurs, such modifications shall be the least restrictive necessary to accommodate the security needs of the jail.

City Defendants have a long history of failing to provide eligible youth on Rikers Island with the special education and related services guaranteed to them by federal law. *See, e.g.*, *Handberry*, 219 F. Supp. 2d at 541 ("As a result of this failure to consistently develop and implement TEPs, eligible students are deprived of special education services to which they are legally entitled."); Pls.' Letter to Judge Francis, Feb. 28, 2014 (Doc. No. 192 at 2, Ex. A). Dr. Leone summarily concludes, however, that City Defendants have complied with this important mandate *in toto* with virtually no analysis of anything more than a few procedural requirements.

For example, Dr. Leone gives little attention to the provision of the Remedial Order designed to ensure a student's special education rights are not extinguished by pretextual or exaggerated assertions of "security." Dr. Leone assessed City Defendants' compliance with that provision, which requires that City Defendants modify IEPs only where "consistent with legitimate penal objectives and in the least restrictive means necessary to accommodate the security needs of the jail," by reviewing a random selection of Individualized Education Programs ("IEP") and Special Education Programs ("SEP"). Second Report at 12–14; Third Report at 14–15.

Dr. Leone did find material modifications to class members IEPs. For example. Dr. Leone finds that SEPs generally contained far less detail about prior evaluations, student needs, and transition activities. Third Report at 14. He also finds that on several IEPs, "several goals" were replaced with "only one broader goal." But despite evidence showing material modifications to IEPs—and despite the critical importance of this provision of the remedial

9

order—Dr. Leone does not report a single fact to support the "legitimate penal objectives" for City Defendants' modifications, the restrictiveness of those modifications, or the security needs of the jail.  Essentially, Dr. Leone assessed only whether Defendants' modified IEPs, not whether they were legally justified in doing so.  Absent such assessment, there is no factual basis with which to support a finding of compliance with respect to this provision.

## V. Due to Changed Circumstances, the Reports Fail to Show that Defendants Are Compliant With the Remedial Order.

Since Dr. Leone finalized his Third Report, all adolescents have been transferred from Rikers Island—the only facility described in Dr. Leone's Reports—to another facility for juveniles.[5]  Due to these changed circumstances, the facts introduced in Dr. Leone's Reports are now moot.  These changed circumstances are not minor or incidental; instead, these transfers have created a wholly new educational setting for Plaintiffs.  Although Dr. Leone's Third Report references the imminent removal of the adolescent population at Rikers (Third Report at 8), it does not report on the status of plans for education for the students moved to the SSD.

City Defendants' transition of class members from Rikers Island to the SSD has been chaotic at best.[6]  As a result of several fights and skirmishes, Defendants have reportedly removed a significant number of adolescents from education programming.[7]  It is unclear whether those students have received or are receiving three hours of education per day.  Others

---

[5] *See* Christopher Robbins, *Raise the Age Moves All Young Teenagers Off Rikers Island,* Gothamist (Oct. 1, 2018, 12:40 PM), http://gothamist.com/2018/10/01/all_young_teenagers_have_been_moved.php.

[6] See, e.g., Jan Ransom, *Teenagers Were Moved Off Rikers for Safety. Their Brawls Came, Too*, N.Y. Times, (Oct. 4, 2018), https://nyti.ms/2O74HKx (Stone Decl., Ex. D (Doc. No. 279-4)); Stephanie Pagones, Juvenile Center Teacher says Teens Have Sent Furniture Flying, New York Post (Oct. 5, 2018, 10:10 AM), https://nypost.com/2018/10/05/juvenile-center-teacher-says-teens-have-sent-furniture-flying/ (Stone Decl., Ex. E (Doc. No. 279-5)); Daily News Editorial Board, *Youthful Mistakes: Raise the Age Endures Growing Pains*, (Oct. 6, 2018, 4:05AM), http://www.nydailynews.com/opinion/ny-edit-raise-the-age-20181004-story.html (Stone Decl., Ex. F (Doc. No. 279-6)); Chasan & Mannarino, *supra* note 2; Spectrum News Staff, *Union: 18 Correction Officers Hurt Breaking Up Fight at Bronx Juvenile Facility*, (Oct. 7, 2018, 6:28PM), http://www.ny1.com/nyc/all-boroughs/news/2018/10/07/correction-officers-hurt-at-horizon-juvenile-center-bronx-nyc-correction-officers-benevolent-association-says (Stone Decl., Ex. H (Doc. No. 279-8)).

[7] *See* Wallace, *supra* note 3.

10

have been suspended from education for unknown periods of time, the status of their education programming uncertain.[8]  Prior to the move, City Defendants had phased out room confinement's equivalent, cell study, for this age cohort.  Now, it appears that they may have resumed this practice as well.[9]

The circumstances have also changed materially and profoundly for the 18 to 21 year olds left on Rikers.   Dr. Leone finds that the City defendants were not fully compliant with the requirements of providing a full school day to this cohort. Second Report at 5–7; Third Report at 4–6.  Subsequent developments have only worsened the situation.

In both Reports, Dr. Leone touts "success houses."  Second Report at 6; Third Report at 5.  These were housing units at the George Motchan Detention Center (GMDC) in which City Defendants housed only those young adults who enrolled in school programming.  Dr. Leone found significantly improved attendance rates for students in "success houses" and recommends the expansion of the "success house" model.  Third Report at 5, 16.

DOC closed GMDC permanently shortly afterwards.  All of the students and potential students were dispersed from these "success houses" to various housing areas throughout the Department.  As of October 2018, they were housed in at least 190 different housing areas throughout Rikers and the borough jails.[10]  In other words, the *entire system* that Dr. Leone found promising has been dismantled.  It is hard to imagine this dispersal, which is a marked contrast from the "success house" model touted by Dr. Leone, has not impacted City Defendants' provision of schooling to this population.

---

[8]  *Id.*
[9]  *See id.* (describing the practice of providing school work packets to students who could not attend classes).
[10] *See* Department of Correction, *Young Adult Housing Monthly Progress Report*, (October 2018), https://www1.nyc.gov/assets/boc/downloads/pdf/Reports/DOC-Reports/18_yo_census_ october_2018.pdf (18 year old census); https://www1.nyc.gov/assets/boc/downloads/ pdf/Reports/DOC-Reports/19_21_yo_census_october_2018.pdf (19 to 21 year old census) (Stone Decl., Ex. C (Doc. No. 279-3)).

## VI. Conclusion

For all the foregoing reasons, the Court should disregard Dr. Leone's findings of substantial compliance with paragraph one of the Remedial Order as to adolescents, paragraph two of the Remedial Order as to adolescents, paragraph three of the Remedial Order, and paragraph five of the Remedial Order.

Dated: New York, New York
November 2, 2018

Respectfully submitted,

THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT

By: _____
Stefen R. Short
Dori A. Lewis
Mary Lynne Werlwas

199 Water Street, Sixth Floor
New York, New York 10038
(212) 577-3530

Roberto Finzi
Daniel Stone
PAUL, WEISS, RIFKIND, WHARTON, &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for Plaintiffs*