UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZAKUNDA-ZE HANDBERRY, *et al.,*

Plaintiffs,

-against-

WILLIAM C. THOMPSON, JR., *et al.,*

Defendants.

## CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL CONFIRMATION OF THE SPECIAL MASTER'S THIRD REPORT AND IN OPPOSITION TO PLAINTIFFS' OBJECTIONS

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Janice L. Birnbaum*
*Tel: (212) 356-2085*
*Matter No. 96GL022066*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ............................. 5

STANDARD OF REVIEW.................................................................................. 9

LEGAL ARGUMENT

    POINT ONE

        THE COURT SHOULD AFFIRM THE SPECIAL MASTER'S FACTUAL FINDINGS THAT DURING THE MONITORED PERIOD ADOLESCENTS WERE PROVIDED WITH LEGALLY SUFFICIENT EDUCATIONAL SERVICES EACH SCHOOL DAY AND OVERRULE PLAINTIFFS' OBJECTIONS ......................................... 11

    POINT TWO

        THE COURT SHOULD AFFIRM THE SPECIAL MASTER'S FACTUAL FINDINGS AS TO DOE DURING THE MONITORED PERIOD, AND OVERRULE PLAINTIFFS' OBJECTIONS ......................................... 17

CONCLUSION.................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Pages**

*Benjamin v. Jacobson*, 172 F.3d 144 (2d Cir. 1998) .................................................................. 13

*D.C. v. Department of Education, State of Hawaii* 2008 U.S. Dist. LEXIS 56507
    (D. Haw. July 25, 2008) (magistrate.report), *adopted* 2008 U.S. Dist. LEXIS
    71830 (D. Haw. Aug. 25, 2008) ......................................................................................... 10

*Handberry v. Thompson,*
    219 F. Supp. 2d 525 (S.D.N.Y. 2000), *aff'd in part, vacated in part and*
    *remanded in part*, 446 F.3d 335 (2d Cir. 2006) ............................................. 4, 5, 6, 11, 12, 16

*Island Intellectual Property LLC v. Deutsche Bank AG,*
    2012 U.S. Dist. LEXIS 16413 (S.D.N.Y. Feb. 6, 2012) ........................................................ 10

*Ladner v. City of New York*, 20 F.Supp.2d 509 (E.D.N.Y. 1998) ................................................. 4

*Lancaster v. Tilton*, 2007 U.S. Dist. LEXIS 95523 (C.D. Cal. 2007) ......................................... 13

*Paul v. Intel Corp.*, 2012 U.S. Dist. LEXIS 141137 (D. Del. 2012) ............................................ 10


**Federal Statutes and Regulations**

18 U.S.C. § 3626 ............................................................................................................................ 10

18 U.S.C. §3626(a)(1)(A) ........................................................................................................ 6, 10

18 U.S.C. § 3626(b)(3) .................................................................................................................. 10

20 U.S.C. § 1400, *et seq.* ................................................................................................................ 7

20 U.S.C. § 1414(d)(3)(D) ...................................................................................................... 4, 16

20 U.S.C. § 1414(d)(3)(F) .............................................................................................................. 4

20 U.S.C. § 1414(d)(4)(A)(ii) ................................................................................................. 4, 16

20 U.S.C. § 3626(a)(1) .................................................................................................................. 16

Fed. R. Civ. P. 53 ............................................................................................................................ 9

Fed. R. Civ. P. 53(a)(1)(C) ............................................................................................................ 9

Fed. R. Civ. P. 53(f)(1) ............................................................................................................ 3,10

**Statutes**                                                                                                       **Pages**

**New York Statutes and Regulations**

N.Y. Correction Law § 500-p ........................................................................................ 13

N.Y. Education Law § 3202(7) ........................................................................................ 5

N.Y. Education Law § 3202(7)(a) ................................................................................... 5

8 NYCRR 118.1 ............................................................................................................. 5

8 NYCRR 118.3(a) ......................................................................................................... 5

8 NYCRR 118.4(b) ....................................................................................................... 11

8 NYCRR 118.5 ............................................................................................................. 5

9 NYCRR 7070.1 ........................................................................................................... 5

9 NYCRR 7070.2(a)(1) .................................................................................................. 5

9 NYCRR 7070.2(a)(2) .................................................................................................. 5

9 NYCRR 7070.2(a)(3) .................................................................................................. 5

9 NYCRR 7070.4(b)(1) .................................................................................................. 5

9 NYCRR 7070.4(g) ...................................................................................................... 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ZAKUNDA-ZE HANDBERRY, *et al.,*

Plaintiffs,

96 CV 6161 (GBD)

-against-

WILLIAM C. THOMPSON, JR., *et al.,*

Defendants.

---------------------------------------------------------------------- x

**CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL CONFIRMATION OF THE SPECIAL MASTER'S THIRD REPORT AND IN OPPOSITION TO PLAINTIFFS' OBJECTIONS**

**PRELIMINARY STATEMENT**

The City Defendants[1] seek to have the Court adopt in large measure Special Master Peter Leone's *Third Report on the Status of Education Services for Inmates Aged 16-21 at Rikers Island,* revised July 2018 ("Third Report" or "Report"; Docket No. 273-2). In the Report, Dr. Leone analyzed City Defendants' compliance with the Court's current injunction order dated March 31, 2016 ("Order"; Docket No. 250). Since the Third Report covers Dr. Leone's two years of monitoring that ended on March 31, 2018 (the "Monitored Period"), City Defendants seek adoption of portions of it and do not see a need to have the earlier *Second*

---

[1] The City Defendants are the City of New York ("City") on behalf of its mayoral agency, the New York City Department of Correction ("DOC"), the New York City Board of Education ("BOE") now known as the New York City Department of Education ("DOE"), and a number of former DOC officials and the former members of BOE's board, all sued in their official capacity. Hence these defendants are collectively referred to as the "City Defendants" throughout this memorandum of law and the supporting declaration.

*Report on the Status of Education Services for Inmates Aged 16-21 at Rikers Island*, revised December 19, 2017 ("Second Report"; Docket No. 273-1) formally adopted, except to the extent that it is incorporated in the Third Report. In addition, as outlined herein, Plaintiffs' objections to the Second and Third Reports are without merit.

First, Dr. Leone's conclusion that adolescent class members were provided with more than the legally required three hours of educational services each school day during the Monitored Period is well-documented, long-standing and indisputable. This finding applies to all adolescents, including those who were in special housing units, such as the Transitional Restorative Unit and Second Chance Housing, among others. The conclusion includes both general and special education. Hence, as to the adolescents, City Defendants were in substantial compliance during the Monitored Period.

Second, Dr. Leone's factual findings support the conclusion that DOE met its obligations in all regards during the Monitored Period. Pursuant to parameters set out in State law, DOE is required to make available a minimum of three hours of educational services to eligible inmates[2] (i.e., class members) each school day. DOE provided and continues to provide such coursework in small class settings and sometimes individually. Moreover, even when 18-21 year old eligible inmates failed to attend class, DOE had teachers assigned to cover those classes. Hence DOE met its legal obligations.

Third, the Special Master's conclusion is well-supported by his analysis and the cited evidence that City Defendants have in place and implement a policy and procedures that facilitate the movement of class members who opt to receive DOE-provided educational

---

[2] For the definition of eligible inmate, see *infra* at 5.

services to jails where DOE offers educational services. (Note that since adolescent class members were and continue to be housed only in facilities where DOE provides educational services to them, this provision of the Order (¶3) applies only to 18-21 year olds.)

Thus the City Defendants request that the Court confirm Dr. Leone's Third Report as to these findings.

In addition, Plaintiffs have filed objections to the Special Master's Report that are without legal and/or factual support. Plaintiffs' objection that the Report is too dated and without factual support is meritless. The Report summarizes the Special Master's findings from his visits over the 2-year monitoring period that ended just nine months ago. While it does not contain any findings concerning the Horizon Juvenile Center ("Horizon"), the detention facility at which 16-17 year old adolescents are currently housed, post implementation of the Raise the Age legislation on October 1, 2018, that does not render moot or irrelevant the findings made by the Special Master concerning education for adolescents prior to October 1. Those findings should be adopted and the weight to be given to them – for example on a future motion to terminate made by City Defendants – can be determined at that point. Plaintiffs' objection that the Report lacks factual support is without merit, as the bases for the Special Master's conclusions are expressly set forth in the Report (and the earlier reports to the extent that they are referenced).[3] Moreover, if there is an open question, the Court could resubmit the Report to the Special Master with instructions to provide additional information. Fed. R. Civ. P. 53(f)(1).

---

[3] It is based on seven site visits totaling 16 days: observed classroom instruction during which the Special Master obtained copies of handouts, worksheets, and instructional materials; interviewed students as well as administrators, teachers, and DOE and DOC support staff; reviewed attendance records, and Individualized Education Programs, Special Education Programs, and related documents; debriefed with DOC and DOE leadership after each visit and made recommendations; and conferred with DOE's District 79 staff before and after visits to request additional documents and information. Third Report at 4, 6, 7.

Moreover, Plaintiffs' reliance on newspaper reports must be rejected because all are inadmissible hearsay. Thus none of the exhibits annexed to the Stone declaration are admissible evidence. *Ladner v. City of New York*, 20 F.Supp.2d 509, 519 (E.D.N.Y. 1998).

Further, the undisputed evidence shows that DOE has met its obligations. DOE has and continues to make available required general and special education services to all class members. Further, plaintiffs' complaint is meritless concerning the closure of the George Motchan Detention Center ("GMDC") and its school houses. That GMDC inmates are now housed in other jails does *not* show that they do not have access to DOE-provided educational services, since DOE's East River Academy has and continues to provide educational services at a number of other jails on Rikers Island which house former GMDC eligible inmates. Further, there is no legal requirement to utilize school dorms – and while Dr. Leone has expressed a preference for them, his finding was that the GMDC school dorm only slightly improved school attendance. Third Report at 5, 7. Moreover, as observed by Judge Motley in this case, "maximization of enrollment is not the business of the court," *Handberry v. Thompson,* 219 F. Supp. 2d 525, 534 (S.D.N.Y. 2000). In addition, plaintiffs are mistaken when they suggest that a student's special education plan cannot be changed except for legitimate penalogical reasons. Under both the Order and the Individuals with Disabilities Education Act, a plan may be amended or modified following an IEP/SEP team meeting or upon written agreement (20 U.S.C. §§ 1414(d)(3))(D), (d)(3)(F), (d)(4)(A)(ii)) and under the Order, a plan may be amended or modified for legitimate penalogical reasons as well. Docket No. 250, ¶5.

Thus, for the reasons outlined above, the Court should adopt those portions of the Special Master's Third Report that contain the factual findings as to adolescents and as to

DOE, confirm the Special Master's findings of substantial compliance as to paragraph 3 of the Order,[4] and reject Plaintiffs' objections to the Report.

**STATEMENT OF FACTS AND
RELEVANT PROCEDURAL HISTORY**

This class action concerns the provision of educational services by the New York City Department of Education ("DOE") to a class of school-age inmates incarcerated at correctional facilities operated by the City of New York ("City") through its Department of Correction ("DOC"). The class is composed of eligible inmates. An eligible inmate is someone who meets the following criteria:

    a. is incarcerated at a correctional facility operated by DOC (N.Y. Education Law § 3202(7), 8 NYCRR 118.1, 9 NYCRR 7070.1); and

    b. has been incarcerated for ten or more calendar days, or in the judgment of the warden of the inmate's facility, is reasonably likely to be incarcerated for ten or more calendar days, plus an additional twelve school days (8 NYCRR 118.1, 118.3(a), 118.5; 9 NYCRR 7070.2(a)(3), 7070.4(b)(1), 7070.4(g)); and

    c. has not received a high school diploma or its equivalent (8 NYCRR 118.1, 9 NYCRR 7070.2(a)(2)); and

    d. is under 21 years of age on September 1 of the applicable school year (8 NYCRR 118.1, 9 NYCRR 7070.2(a)(1)); and

    e. if the inmate is 18-21 years of age, has indicated a desire to receive DOE-provided educational services while incarcerated at a DOC correctional facility (N.Y. Education Law § 3202(7)(a).

*See Handberry v. Thompson,* 219 F.Supp.2d 525, 546 (S.D.N.Y. 2002), *aff'd in part, vacated in part and remanded in part,* 446 F.3d 335 (2d Cir. 2006); *see also,* Declaration of Timothy

---

[4] The Special Master also found substantial compliance with paragraph 5 of the Order, which concerns special education requirements. This falls to DOE exclusively. City Defendants ask the Court to find DOE in substantial compliance with all of its obligations, including paragraph 5.

Lisante dated October 12, 2007 ("Lisante Decl."), Ex. A (Education Plan) at 2 (Docket No. 172).

In January 2000, judgment was entered against defendants (Docket Nos. 71, 81) and they were ordered to draft an education plan, which was filed and adopted by the Court. (Docket Nos. 82, 96). In October 2000, the Court appointed a monitor for one year (Docket No. 99), who reported to the Court in 2001 on the implementation of the Education Plan (Docket Nos. 106, 115), which led to motion practice in Spring 2002 (Docket Nos. 109-112, 118-123), and the Court's 50-paragraph injunction dated August 29, 2002 (the "Injunction") (*Handberry*, 219 F.Supp.2d at 546-51), which was appealed (446 F.3d 335 (2d Cir. 2006)). In April 2006, following panel rehearing, the Second Circuit issued its amended opinion and mandate,[5] in which it vacated 23 Injunction paragraphs without remand,[6] affirmed 13 paragraphs that appeared to be based primarily on federal statutory law,[7] and vacated and remanded 9 paragraphs[8] "with instructions that the district court determine which, if any, of the remanded paragraphs of the injunction are 'necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs,' 18 U.S.C. §3626(a)(1)(A), and limit the injunction thereto." *Handberry*, 446 F.3d at 356.

Eight months later, plaintiffs moved for an amended injunction. In September 2007, they amended that motion to reflect the amendments to the Individuals with Disabilities

---

[5] The Circuit's opinion references IDEA 1997 and its superseded regulations, as that was the law under which the case was originally briefed and argued. IDEA was amended and reauthorized in 2004, and the revised statute took effect on July 1, 2005; new regulations were promulgated in August 2006.

[6] The 23 vacated paragraphs are ¶¶3-5, 7, 9-18, 21, 22, 27, 39-43 and 45.

[7] The 13 affirmed paragraphs are ¶¶6, 8, 19, 24, 26, 28, 31-32, 34, 37, 44, 46 and 47.

[8] The 9 vacated and remanded paragraphs are ¶¶20, 23, 25, 29, 30, 33, 35, 36 and 38.

Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA") that took effect in 2005. In October 2007, City Defendants filed opposition papers to plaintiffs' amended motion. (Docket Nos. 171-173, 182). Oral argument was heard in early 2008, and thereafter, the matter was referred to Magistrate Francis to see if any disputed issues could be resolved or narrowed. (See minute entries from March-September 2008.) They could not.

In October 2013, the matter was referred back to Magistrate Francis for non-dispositive purposes (Docket No. 185). Defendants submitted the declaration of Nicholas Marinacci dated January 13, 2014 (Docket No. 189-1), to update the court and the parties on educational services to class members. Plaintiffs filed an opposition submission (Docket No. 192). By order dated June 10, 2014 (Docket No. 203; "Appointing Order"), Magistrate Francis appointed Dr. Peter Leone as the special master "to collect and evaluate facts relating to the provision of educational services to DOC inmates between the ages of 16 and 21 insofar as those facts will assist the Court in modifying the Injunction in accord with the mandate of the Second Circuit." *Id.* at 3.[9] In fall 2014, Dr. Leone conducted a 5-day site visit of East River Academy ("ERA"), DOE's educational program to eligible inmates on Rikers Island. That fall, Dr. Leone interviewed 30 eligible inmates, both 16-17 year old adolescents and 18-21 year old young adults, as well as teachers and school administrators; had conversations with correctional officers and corrections administrators; observed classrooms; and reviewed documents and data

---

[9] The Appointing Order states:

> Certain provisions of the Injunction have been vacated outright and are therefore beyond the scope of the Special Master's responsibilities. Other provisions were affirmed and are subject to the Special Master's review. Finally, some provisions were vacated and remanded for a determination whether they are supported by federal law. This is a mixed question of law and fact, which makes facts related to those provisions appropriate for the Special Master's review. Indeed, in the event that he finds facts that would militate against the renewal of such a provision, it may be unnecessary to determine whether that provision has a basis in federal law.

supplied by DOE and DOE, including individualized education programs ("IEPs") and special

education plans ("SEPs").  On January 30, 2015, Dr. Leone provided his initial report to the

Court and the parties.  Magistrate Francis issued a report and recommendation on December 15,

2015 ("Report and Recommendation"; Docket No. 230), which the Court in large measure

adopted and incorporated into the current injunction Order (Docket No. 250).

The Order has the following five monitoring provisions:

Provision of Educational Services

1. All eligible inmates shall be provided a minimum of 3 hours of educational services every school day.

2. Placement in a restricted housing unit[10] does not change an eligible inmate's entitlement to educational services under any provision of this Order.

3. Unless stated explicitly to the contrary, any and all requirements set forth in this Order shall apply to all of the schools, educational programs, and methods of instruction operated by DOE in DOC facilities.

4. DOC shall ensure that each eligible inmate is provided access to educational services consistent with this Order in a timely manner, including if necessary providing escorts for travel to and from his or her place of educational instruction.

Special Education Services

5. Inmates who are disabled and identified as in need of special education or related services shall receive such services, including when placed in a restricted housing unit or method of instruction.  If necessary, an Individualized Education Plan ("IEP") or Special Education Plan ("SEP") may be modified in accordance with 20 U.S.C. § 1414(d) and 34 C.F.R. § 300.324, consistent with legitimate penal objectives.  In the event this

---

[10] DOC has two special housing units, the Transitional Restorative Units ("TRU") and Second Chance Housing Units ("Second Chance"), that appear to be covered by the current injunction Order, but are not "restricted housing units."  These special housing areas have the same out-of-cell time as general population (i.e. 14 hours), and group and individualized support programming.  In addition to these special housing units, DOE has Enhanced Security Housing ("ESH") and Secure Housing Units ("Secure"), which are structured housing areas with several different levels or phases of security, with a minimum of seven hours out-of-cell time.  Only inmates who are 18 years of age or older may be placed ESH or Secure.

> occurs, such modifications shall be the least restrictive
> necessary to accommodate the security needs of the jail.

Under the Order, among other things, Dr. Leone was appointed for a 2-year term (the "Monitored Period") which ended on March 16, 2018.

Pursuant to the Order, Dr. Leone issued three semi-annual reports. In the Third Report, among other things, Dr. Leone summarized his findings from his visits during the two-year Monitored Period, noted the status of compliance for each monitoring provision, commented on outstanding issues, and concluded with several recommendations. Third Report at 3. During the Monitored Period, Dr. Leone conducted seven site visits for a total of sixteen days. *Id.* at 4. He observed classroom instruction and interviewed administrators, teachers, DOE and DOC support staff, and students. He reviewed attendance records, and IEPs, SEPs and related documents. *Id.* He debriefed with DOC and DOE leadership at the end of each visit and shared observations from the visit and made recommendations. He also conferred with DOE administrators from District 79, which operates DOE's educational programs for detainees whether adolescents (16 and 17 years old) or young adults (18-21 years old), to request additional information and documents. *Id.*

City Defendants now move to have the Court confirm certain portions of the Third Report and to reject Plaintiffs' objections to portions of the Second and Third Reports.

## STANDARD OF REVIEW

Rule 53 of the Federal Rules of Civil Procedure governs the appointment of masters. It provides that a master may be appointed to "address post trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). In acting on a master's report, the court must give the parties notice and an opportunity to be heard; may receive evidence, and may "adopt or affirm,

modify, wholly or partly reject or reverse or resubmit to the master with instructions." *Id.* at 53(f)(1). The court must decide *de novo* all objections to a master's findings of fact or conclusions of law. *Id.* at 53(f)(3) and (4); *Island Intellectual Property LLC v. Deutsche Bank AG,* 2012 U.S. Dist. LEXIS 16413 at *5 (S.D.N.Y. Feb. 6, 2012); *In re: Intel Corp. Microprossor Antitrust Litigation; Paul v. Intel Corp.,* 2012 U.S. Dist. LEXIS 141137 at *5-6 (D. Del. 2012); *D.C. v. Department of Education, State of Hawaii,* 2008 U.S. Dist. LEXIS 56507 (D. Haw. July 25, 2008) (magistrate report), *adopted* 2008 U.S. Dist. LEXIS 71830 (D. Haw. Aug. 25, 2008).

In addition, it is undisputed that the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), applies to this case. *Handberry,* 446 F.3d at 341-56. The PLRA limits a federal court's power to continue prospective relief by requiring the court to make "written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right [of a particular plaintiff or plaintiffs], extends no further than necessary to correct the violation of the Federal right, and is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). The court and therefore the special master are also required to give substantial weight to any adverse impact on the operation of a criminal justice system caused by the relief. 18 U.S.C. § 3626(a)(1)(A).

# LEGAL ARGUMENT

## POINT ONE

### THE COURT SHOULD AFFIRM THE SPECIAL MASTER'S FACTUAL FINDINGS THAT DURING THE MONITORED PERIOD ADOLESCENTS WERE PROVIDED WITH LEGALLY SUFFICIENT EDUCATIONAL SERVICES EACH SCHOOL DAY AND OVERRULE PLAINTIFFS' OBJECTIONS

The Special Master repeatedly found the City Defendants substantially compliant with all five substantive provisions of the Order (paragraphs 1-5) as applied to 16 and 17 year old eligible inmates during the Monitored Period. Third Report at 2, 4, 8, 11, 13-15.

Paragraph 1 of the Order requires eligible inmates to be provided with a minimum of three hours of educational services each school day, and paragraph 2 states that placement in a restricted housing unit does not change an eligible inmate's entitlement to educational services under any provision of the Order. As to these two paragraphs, the Special Master found that apart from excused absences, 16 and 17 year olds (all of whom are compulsory education students) received an average of five hours of educational services[11] each school day (*id.* at 2, 4). This includes those placed in Transitional Restorative Units ("TRU"), Second Chance Housing Units ("Second Chance"), Mental Observation Units ("MOU"), and Protective Custody ("PC"). *Id.* at 4, 8; Declaration of Tonya Threadgill, dated December 18, 2018 ("Threadgill Decl."), ¶¶7, 10, 11, 17, 20, and Exhibits A-D. Thus the City Defendants

---

[11] The curriculum for education in detention settings is governed solely by New York law and is outside the purview of this Court. *Handberry*, 344 F.3d at 344-7, 355-6. For the Court's reference, the curriculum is set forth in 8 NYCRR 118.4(b) and provides for three hours of instruction each school day, of which two hours must be instruction in reading, mathematics and oral and written communication. The remaining hour may include activities such as life skills education, instruction concerning substance abuse, including the misuse of alcohol, tobacco and other drugs, and other appropriate programs approved by the State Education Commissioner.

were in substantial compliance with Injunction Order paragraphs 1 and 2 for adolescent eligible inmates during the Monitored Period.

Plaintiffs argue that the Third Report's conclusion for adolescents in these housing units should be rejected because it does not contain detailed facts concerning TRU, MOU, and PC; did not mention Second Chance housing by name; and lacked "factual data" to support the conclusion that educational services provided to adolescents in these housing units were similar and/or comparable to those provided to other students. *See* Plaintiffs' Objections to Dr. Leone's Second and Third Monitoring Reports, (Docket No. 284; "Plaintiffs' Objections") at 4-5. They also complain that Dr. Leone's explanation of his methodology lacks details. *Id.* at 5.

Plaintiffs' objections are without merit. First, the coursework provided by ERA to adolescents is outside the scope of the Federal court's jurisdiction. Only the provision of no education would be actionable. *Handberry,* 446 F.3d at 352-56. Second, from January 2017 to the end of the Monitored Period, all adolescents, regardless of housing unit, received educational services in a classroom setting, and all received more than three hours each school day. Third Report at 4, 8; Threadgill Decl., ¶¶7, 10, 11, 17, 20, and Exhibits A-D. Further, as set forth in paragraph 17 of the Threadgill declaration, adolescent inmates in Second Chance Housing received more than three hours of educational services in a small class setting each school day. Finally, Dr. Leone's methodology is well documented and detailed. Indeed, plaintiffs acknowledge that his methodology included visiting housing units and observing classes. This is more than a sufficient basis on which to conclude that adolescent eligible inmates in TRU, Second Chance, MOU, and PC were provided with access to a minimum of three hours of educational services each school day. The identification of which classes were

observed is irrelevant. The relevant conclusion – that adolescents were provided with at least three hours of educational services each school day, regardless of housing area – is sufficiently detailed in the Third Report and should be adopted. [12]

Further, City Defendants acknowledge that the Third Report does not cover the period beginning on October 1, 2018, the date on which the Raise the Age legislation took effect. *See* N.Y. Correction Law § 500-p. That fact does not render the Third Report irrelevant or moot as plaintiffs suggest. *Lancaster v. Tilton,* 2007 U.S. Dist. LEXIS 95523 at *17-19 (C.D. Cal. 2007) (Fact-finding conducted before termination motion and during prior 13-month period were relevant to assess current prison conditions); *accord, Benjamin v. Jacobson,* 172 F.3d 144, 166 (2d Cir. 1998). The weight to be given to the Report may be assessed when it is proffered.

The Special Master also found that the City Defendants were in substantial compliance concerning paragraph 3 of the Order. It provides that all requirements of the Order apply to all schools, educational programs and methods of instruction operated by DOE in DOC facilities. This paragraph did not apply to adolescent eligible inmates last school year since they were housed at jails on Rikers Island at which ERA held school. Threadgill Decl.,¶¶7, 15. In his Third Report, the Special Master detailed the evidence on which he relied to make his findings, noting that he found no systemic problem with City Defendants' processes and efforts to ensure that all inmates eligible and interested in attending ERA were transferred to facilities in which ERA provided educational services. *Id.* at 11-12; Threadgill Decl., ¶15. He noted that

---

[12] City Defendants also note that Plaintiffs omitted that Dr. Leone conducted seven site visits for a total of 16 days, interviewed administrators, teachers, DOE and DOC support staff, and students, reviewed attendance records, IEPs. SEPs. and related documents, debriefed with DOC and DOE leadership at the end of each visit, sharing observations and making recommendations, and followed up with DOE by requesting additional records and data. Third Report at 3-4.

"[b]oth DOC and DOE leadership are well aware of the education rights of inmates and strive to ensure those interested in attending school receive services." Third Report at 12; *see also,* Threadgill Decl., ¶15. Thus City Defendants are in substantial compliance with Injunction Order paragraph 3.

Paragraph 4 concerns DOC's escorting of eligible inmates to school. Since Dr. Leone found that 16 and 17 year olds received an average of five hours of educational services each school day during the Monitored Period – a finding that plaintiffs do not question -- the City Defendants are in substantial compliance with this provision for adolescents. *Id.* at 2, 4, 8, 13. To the extent that plaintiffs question the evidence supporting the finding that adolescents in TRU, Second Chance, MOU, and PC were provided with at least three hours of educational services each school day, plaintiffs' position is without basis, since Dr. Leone explained the basis for his conclusion. *Id.* Moreover, this factual finding is further supported by the Declaration of Tonya Threadgill, who attested to the educational services provided to adolescents in TRU, Second Chance, MOU, and PC during the Monitored Period. *See* Threadgill Decl., ¶7, 16-20.

Paragraph 5 requires DOE to provide special education and/or related services to students who are disabled and identified as in need of such services (including those in restricted housing units or methods of instruction). SEPs (or IEPs if implemented at ERA), may be modified in accordance with (a) the IDEA, and/or (b) legitimate penal objectives, provided the modifications are the least restrictive necessary to accommodate the jail's security needs. In his Third Report, the Special Master found substantial compliance with this provision. The Special Master detailed the review he undertook to reach his conclusions and the work that DOE does in regard to meeting its programmatic and educational obligations.

14

Moreover, Dr. Leone found substantial compliance with this special education provision in *every* monitoring report he issued, which covers the period from the 2016-17 school year going forward. *See* Dr. Leone's reports filed as Docket Nos. 231-4 at 11; 273-1 at 11-15; 273-2 at 13-15. He based his conclusion on staff interviews and a review of files which evidenced the fact that ERA reviews files and interviews inmates at intake for special education eligibility as they are placed. Third Report at 14. DOE reviews its online data bases, including SESIS, STARS, and ATS for transcripts, school history and special education status. And on the rare instances in which a student comes from a school district outside the City, staff request records from that school district. Third Report at 14; Threadgill Decl., ¶¶13-14.

He also reviewed SEPs, interviewed special education teachers and observed instruction of students with disabilities. He discussed with teachers and counselors special education service delivery and the students with disabilities on their rosters. He interviewed students with SEPs who were receiving special education services, including those housed in general population and those in other units. Third Report at 13-14.

Dr. Leone also discussed his extensive review of SEPs and IEPs for 19 students with disabilities undertaken in March 2017. His conclusion was that the SEPs, which are the type of education plan implemented at ERA, were materially similar to the previously developed IEPs. All contain information about present levels of performance, annual goals, frequency and intensity of special education services. Finally, he noted that for two students, the SEPs were comparable, but not identical, to their IEPs. He analyzed the differences, which were not material.[13] *Id.* at 14-15. Moreover, all SEPs are developed at IEP/SEP team

---

[13] For file #3, the student's IEP contained one reading, one writing, two math and two counseling goals, while the SEP contained one reading, one writing, one math and one social development goal. The related service of 40

Continued...

conferences that meet the requirements of the IDEA and permit the student's special education plan to be revised and/or modified. 20 U.S.C. §§ 1414(d)(3))(D), (d)(4)(A)(ii)); Threadgill Decl., ¶13.

Plaintiffs argue that a detainee's IEP cannot be modified unless there is a legitimate penalogical reason. That is incorrect. The Second Circuit expressly acknowledged that detention special education plans (which used to be called Temporary Education Plans and are now called Special Education Plans) may differ from that offered in community schools. *Handberry,* 446 F.3d at 348-51. Further, plaintiffs are mistaken when they suggest that modification is only permitted if there is a penalogical reason. While a legitimate penalogical reason may serve as a reason for modifying an SEP if needed, it does not displace the IDEA's methods of modifying education plans. 20 U.S.C. § 3626(a)(1). Nor should it. The changing needs of the student should drive the content of the student's special education plan, and if needed, the plan should be revised and/or modified accordingly. 20 U.S.C. §§ 1414(d)(3))(D), (d)(4)(A)(ii)).

Hence Plaintiffs' objections should be rejected. Since there was substantial compliance with all paragraphs of the Order during the Monitored Period, and no finding of systemic classwide violation of the federal rights of adolescent eligible inmates, the findings of the Third Report for the Monitored Period as applied to adolescents should be affirmed.

---

minutes of individual counseling per week was identical on both plans. The IEP placement called for a 15:1 student to teacher ratio, whereas the SEP placed the student in an integrated instructional model with 1:1 pull-out services each school day.

For file #13, the student's IEP and SEP contained similar instructional goals, with instruction in a general co-taught class. Where the IEP listed paraprofessional support, the SEP identified special education support in science and social studies. Moreover, the SEP included 40 minutes of counseling once a week, a related service not on the IEP, which may be reflective of the student's individual needs in light of incarceration. Third Report at 15.

## POINT TWO

## THE COURT SHOULD AFFIRM THE SPECIAL MASTER'S FACTUAL FINDINGS AS TO DOE DURING THE MONITORED PERIOD, AND OVERRULE PLAINTIFFS' OBJECTIONS

The facts concerning DOE, as found by the Special Master in his Third Report, should be affirmed. They show that DOE is in substantial compliance with its obligations under the Order.

Plaintiffs do not raise an objection to Paragraph 1 of the Order, which requires that eligible inmates have access to three hours of educational services each school day. The evidence adduced by the Special Master shows that DOE has consistently operated school areas on Rikers Island during the Monitored Period that offered eligible inmates educational programs that either met or exceeded the 3-hour daily requirement. *See* Threadgill Decl., ¶¶7, 10, 11, 16-20 and Exs. A-F. ERA offered daily educational programs of five hours for the adolescents (*id.* at 4), and three to over four hours to young adult eligible inmates (*id.* at 4). *Id.* ERA is neither responsible for nor empowered to escort students to school. Hence it has met its obligations as to paragraph one, and is in substantial compliance with it.

Paragraph 2 concerns eligible inmates in restricted housing units. Dr. Leone found substantial compliance with this paragraph for 16 and 17 year olds (*id.* at 8), and noted lengthy delays in students getting to class for 18-21 year olds in ESH and Secure. However, he also noted that the ESH class that he observed at OBCC was staffed by two teachers, dually certified in special education and content areas, and the class at GRVC Secure was staffed with one dually certified teacher. *Id.* at 10. In addition, he observed DOE-provided counseling services in the ESH class. *Id.* at 9. Finally, although Dr. Leone speculated about whether the

school area at GRVC Secure had enough desks, he did not observe any instance in which the number of desks was insufficient to support those who attended school in that setting – and in any event, this falls to DOC. The staff provided by DOE is more than sufficient to meet its obligations and any hypothetical need. Plaintiffs do not contest this aspect of Dr. Leone's findings as to DOE.

Paragraph 3 makes the Injunction Order requirements applicable to all schools, etc. operated by DOE in DOC facilities. The Special Master found City Defendants in substantial compliance with this paragraph during the Monitored Period. For 16 and 17 year olds, this paragraph was easily met since they were housed at Rikers Island jails with DOE school programs. (This is also the case today at Horizon, the specialized secure juvenile detention facility in which adolescents are currently housed now that the Raise the Age legislation is in effect.) Threadgill Decl., ¶7. Nor is there a systemic problem for 18-21 year old young adult eligible inmates. Third Report at 12. And in any event, the movement of young adult eligible inmates to jails in which ERA has a presence falls solely to DOC. Threadgill Decl., ¶15. Hence, this finding should be affirmed and in any event is not within DOE's purview.

Paragraph 4 concerns movement of eligible inmates so that they are provided access to educational services in a timely matter, including through escorts if necessary. This provision falls squarely within DOC's purview alone. Third Report at 12-13.

Paragraph 5 concerns providing special education services to students with disabilities. This falls to DOE, and the Special Master found DOE in substantial compliance with this paragraph's requirements. Thus the Special Master found that the SEPs that ERA prepares for students with disabilities were legally sufficient; DOE provides students with

disabilities with the special education services on their SEPs; students with disabilities in both general population and in other types of units receive special education services; and the process for identifying students with disabilities and providing them with the special education and related services they need was consistent with the requirements of this provision. *Id.* at 13-15. Thus DOE is in substantial compliance with the requirements of paragraph 5 of the Injunction Order.

For all these reasons, the factual findings as to DOE in the Third Report show that DOE was in substantial compliance with its obligations during the Monitored Period. They should be affirmed and Plaintiffs' objections should be overruled.

## CONCLUSION

For the reasons set forth in this memorandum of law and the supporting declaration of Tonya Threadgill, the Special Master's factual findings in the Third Report of substantial compliance as of the end of the Monitored Period should be affirmed as applied to (a) adolescent eligible inmates; (b) DOE; and (c) City Defendants as to paragraph 3, (which really falls to DOC); and the Plaintiffs' objections should be overruled.

Dated:      December 18, 2018
            New York, New York

                        ZACHARY W. CARTER
                        CORPORATION COUNSEL FOR THE
                            CITY OF NEW YORK
                        Attorney for City Defendants
                        Church Street, Room 2-195
                        New York, New York 10007

            By:     _Janice L. B._____
                        Janice Birnbaum
                        Senior Counsel