USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 2 7 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ZAKUNDA-ZE HANDBERRY, *et al.*,

                       Plaintiffs,

-against-

WILLIAM C. THOMPSON, JR., *et al.*,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

96 Civ. 6161 (GBD)

GEORGE B. DANIELS, United States District Judge:

       Plaintiffs, a class of inmates incarcerated at facilities operated by Defendant New York City Department of Corrections (the "DOC"), brought this action in 1996 against the DOC and Defendant New York City Department of Education f/k/a New York City Board of Education (the "DOE") alleging that they were not receiving educational services that they are eligible for under New York Education Law. (*See* Compl., ECF No. 1.) The DOC, DOE, and the former DOC and DOE officials named as Defendants (collectively, the "City Defendants") move for an order overruling Plaintiffs' objections to Dr. Peter Leone's *Second Report on the Status of Education Services for Youth Aged 16–21 at Rikers Island* (the "Second Report") and *Third Report on the Status of Education Services for Youth Aged 16–21 at Rikers Island* (the "Third Report") and adopting certain findings from the Third Report. (ECF No. 293.) Plaintiffs oppose the motion and request that this Court reappoint Dr. Leone for an additional two-year period to assess the DOC's and DOE's current compliance with this Court's March 31, 2016 Order (the "2016 Order") concerning the provision of educational services to eligible inmates. (*See* Pl.'s Mem. in Opp'n to City Defendants' Mot. for Partial Confirmation ("Third Report Opp'n"), ECF No. 294, at 3.)

       The City Defendants' motion is GRANTED as to their request that this Court overrule Plaintiffs' objections. The City Defendants' request that this Court adopt certain findings in the

Third Report is also GRANTED to the extent that the findings are factual in nature and have not been controverted by Plaintiffs. The City Defendants' request is DENIED to the extent that they seek review of Dr. Leone's legal conclusions as to whether the City Defendants were in compliance with their obligations under the 2016 Order.[1] Plaintiffs' request that this Court reappoint Dr. Leone to monitor the current status of the City Defendants' compliance with the 2016 Order is DENIED without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this class action in 1996. The Plaintiff class consisted of inmates aged sixteen and seventeen ("Adolescent Inmates") and inmates ranging in age from eighteen to twenty-one ("Adult Inmates") incarcerated at DOC facilities who alleged that they were not receiving educational services from the DOE that they were eligible for under New York Education Law. (*See* Compl., ECF No. 1.) In 2000, judgment was entered against Defendants. (*See* Opinion Granting Declaratory Judgment, ECF No. 81.) In 2002, Judge Constance Baker Motley issued a comprehensive injunction (the "2002 Injunction") requiring Defendants to provide a wide range of educational services and establishing procedures for the provision of those services. *Handberry v. Thompson* ("*Handberry I*"), 219 F. Supp. 2d 525, 546–51 (S.D.N.Y. Aug. 28, 2002). On appeal, the Second Circuit affirmed certain paragraphs of the 2002 Injunction, vacated others without remand, and remanded nine paragraphs for a determination of "which, if any of the remanded

---

[1] In their Notice of Motion, the City Defendants seek an order that, *inter alia*, "adopt[s] Dr. Leone's findings of substantial compliance during the period covered by the Third Report as to (1) adolescent . . . inmates (all paragraphs of the [2016] Order); (2) the [DOE] (all paragraphs of the [2016] Order); and (3) [the] City Defendants as to paragraph 3." (Notice of Mot., ECF No. 293.) However, as discussed *infra*, Dr. Leone did not expressly find that the DOE was in substantial compliance with all paragraphs of the 2016 Order or that the City Defendants were in substantial compliance with paragraph three. Nor did Dr. Leone expressly find that the City Defendants were in substantial compliance with their obligations under all paragraphs of the order as to adolescent inmates.

2

paragraphs of the [2002] [I]njunction are 'necessary to correct the violation of the [f]ederal right of a plaintiff or plaintiffs,' and limit the injunction thereto." *Handberry v. Thompson* ("*Handberry II*"), 446 F.3d 335, 356 (2d Cir. 2006) (quoting 18 U.S.C. § 3626(a)(1)(A)).

On remand, Plaintiffs moved to modify the injunction. (*See* Order dated June 10, 2014 ("2014 Order"), ECF No. 203, ¶ 1.) The City Defendants opposed the motion, arguing that their practices had changed such that the relief ordered in the 2002 Injunction was no longer warranted, even to the extent that it would be consistent with the Second Circuit's mandate. (*Id.*) Thereafter, the action was referred to Magistrate Judge James C. Francis for general pretrial management and a report and recommendation on Plaintiffs' motion. (ECF No. 185.)

To facilitate the resolution of the motion, Magistrate Judge Francis issued an Order dated June 10, 2014 (the "2014 Order") that, among other things, appointed Dr. Peter Leone "to collect and evaluate facts relating to the provision of educational services to DOC inmates between the ages of 16 and 21 insofar as those facts will assist the court in modifying the [2002] Injunction in accord with the mandate of the Second Circuit." (2014 Order ¶ 6.) The 2014 Order also provided, among other things, that "[w]ithin 21 days of the date that [Dr. Leone] files his report, each party may submit any objections or comments." (*Id.* ¶ 8.) By Memorandum Decision and Order dated September 9, 2014, this Court overruled the City Defendants' objections and affirmed the 2014 Order. (ECF No. 207.)

On January 30, 2015, Dr. Leone submitted a report (the "2015 Report") in accordance with the 2014 Order. (*See* Report and Recommendation dated December 2, 2015, ECF No. 230, at 8.) The City Defendants filed objections to Dr. Leone's 2015 Report. (*Id.*) After reviewing the objections, Dr. Leone submitted an amended report (the "Amended 2015 Report") and a memorandum responding to the objections. (*Id.*) In the interim, Plaintiffs filed a proposed order

3

modifying the injunction in light of the 2015 Report. (*Id.*) The City Defendants opposed Plaintiffs' proposed order but did not file objections to the Amended 2015 Report. (*Id.* at 8–9.)

On December 2, 2015, Magistrate Judge Francis issued a Report and Recommendation ("Magistrate Judge Francis's Report") recommending that this Court make certain modifications to the 2002 Injunction in light of Plaintiffs' proposed order, the City Defendants' objections to the 2015 Report, and the Amended 2015 Report. (*Id.*) The City Defendants filed objections to Magistrate Judge Francis's Report.[2] (*See* ECF No. 241.) By Memorandum Decision and Order dated March 31, 2016, this Court overruled the City Defendants' objections to Magistrate Judge Francis's Report. (ECF No. 251.) On the same day, this Court issued the 2016 Order, which amended the 2002 Injunction in the manner proposed in Magistrate Judge Francis's Report. (ECF No. 250.) The 2016 Order contains five substantive paragraphs relating to the provision of educational services and "appoints Dr. Peter Leone to continue as this Court's expert and monitor to serve a two-year term from the date of this Order" on substantially the same terms as the 2014 Order. (*Id.* ¶¶ 1–6.) The 2016 Order further states that Dr. Leone "will assess the DOE and DOC's Compliance with this Order and provide this Court with semi-annual reports specifically identifying any areas of non-compliance. Dr. Leone in his reports may also recommend specific changes in DOE and DOC policies and procedures." (*Id.* ¶ 6.)

Dr. Leone issued his first report pursuant to the 2016 Order on February 1, 2017 (the "First Report"). (*See* Letter from Janice Birnbaum to this Court dated Feb. 27, 2017, Ex. 1, ECF No. 257-1.) Neither party filed objections to the First Report.

---

[2] The City Defendants' objections were set forth in a memorandum of law filed in support of a motion to terminate the 2002 Injunction as to Adolescent Inmates. (*See* City Defendants' Notice of Mot., ECF No. 239.) The City Defendants subsequently withdrew that motion. (*See* Letter from Matthew Weiser to this Court dated April 21, 2016, ECF No. 253.)

4

By letter dated January 5, 2018, the City Defendants informed this Court that Dr. Leone had issued the Second Report on December 19, 2017 and requested an extension of time to file objections to or a motion to modify or adopt it. (ECF No. 258.) Although the 2016 Order does not contemplate the filing of objections, the City Defendants asserted that they were entitled to file objections "pursuant to Federal Rule of Civil Procedure 53(f)(2)."[3] (*Id.*) At the time the City Defendants submitted their letter, Plaintiffs' counsel did not assert that Dr. Leone's reports were not subject to the procedures set forth in Rule 53. In fact, the City Defendants stated in their letter that "Plaintiffs' counsel consent to this request." (*Id.*) This Court granted the City Defendants' request for an extension of time to file objections. (Memo Endorsement, ECF No. 259.)

By letter dated February 8, 2018, the parties informed this Court that they intended to meet with Dr. Leone before he issued the Third Report and requested that the parties be permitted to combine their objections to the Second and Third Reports into one set of papers. (ECF No. 265.) This Court granted the parties' request. (Memo Endorsement, ECF No. 266.)

On September 28, 2018, before the time to file objections had passed, pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(b), the DOC and DOE moved to terminate the 2016 Order as to Adolescent Inmates, and the DOE moved to terminate the 2016 Order as to Adult Inmates. (ECF No. 271.) Plaintiffs opposed the motion, (Mem. in Opp'n to City Defs.' Mot. to Partially Terminate Prospective Relief ("Opp'n to Termination"), ECF No. 278), and requested oral argument. (Letter from Daniel Stone to this Court dated Oct. 26, 2018, ECF No. 280.) In their opposition papers, Plaintiffs noted that Defendants' motion triggered an automatic stay pursuant to § 3626(e)(2)(A) of the Prison Litigation Reform Act and requested that this Court

---

[3] As further discussed *infra*, Rule 53 concerns court-appointed special masters. Rule 53(f)(2) provides that "[a] party may file objections to—or a motion to adopt or modify—[a] master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time."

5

"postpone the automatic stay because good cause exists given Plaintiffs' need to conduct discovery after the City Defendants transferred Plaintiffs to a wholly new type of correctional facility, subject to another agency's supervision." (Opp'n to Termination at 13.) Plaintiffs explained that on October 1, 2018, New York City implemented a "Raise the Age" statute, which raised the age of criminal responsibility under New York State law from sixteen to eighteen years old. (*Id.* at 1, 13); *see also* N.Y. Crim. Pro. Law § 1.20(44) (defining an "Adolescent Offender" as "a person charged with a felony committed on or after October first, two thousand eighteen when he or she was sixteen years of age or on or after October first, two thousand nineteen, when he or she was seventeen years of age"). In implementing the statute, the DOC transferred all of the sixteen- and seventeen-year-old Plaintiffs from Rikers Island to a new facility, enrolled them in a new high school, and subjected them to new rules and supervision under the DOC and Administration for Children's Services. (Opp'n to Termination at 1.)

Thereafter, Plaintiffs filed objections to the Second and Third Reports. (Pls.' Objs. to Dr. Peter Leone's Second & Third Monitoring Reports ("Objs."), ECF No. 284.) The City Defendants advised this Court by letter that "the City Defendants are not raising any formal objections to the Second and Third Reports." (Letter from Janice Birnbaum to this Court dated Nov. 2, 2018, ECF No. 285.)

By Order dated November 6, 2018, this Court granted Plaintiffs' requests for a postponement of the automatic stay and for oral argument. (ECF No. 286.) On November 9, 2018, the City Defendants informed this Court that "the City Defendants are withdrawing their motion for partial termination" and that "[w]ithdrawal has the effect of lifting the stay . . . of the [2016 Order]." (Letter from Janice Birnbaum to this Court dated Nov. 9, 2018, ECF No. 287.) The City

6

Defendants also "request[ed] permission to respond to [P]laintiffs' objections to Dr. Leone's Second and Third Reports." (*Id.*) This Court granted the City Defendants' request.

On December 18, 2018, the City Defendants filed the instant motion, which requests that this Court deny and overrule Plaintiffs' objections to the Second and Third Reports and adopt certain of Dr. Leone's findings from the period covered by the Third Report.[4] (*See* Notice of Mot. at 1; *see also* Mem. in Supp. of Mot. for Partial Confirmation of Special Master's Third Report ("Third Report Mem."), ECF No. 294.) In addition to their previously filed objections concerning specific findings in the Second and Third Reports, Plaintiffs filed an opposition to the City Defendants' motion that raises general arguments opposing the adoption of Dr. Leone's findings from the period covered by the Third Report.[5] (*See* Third Report Opp'n.) For reasons explained below, neither Plaintiffs' general arguments in opposition to the City Defendants' motion nor their specific objections to the Second and Third Reports provide a basis for this Court to reject Dr. Leone's factual findings.

## II. PLAINTIFFS' GENERAL ARGUMENTS ARE WITHOUT MERIT

Plaintiffs argue that this Court should deny the City Defendants' motion to adopt Dr. Leone's findings because: (1) Dr. Leone's findings are not subject to "confirmation" under Rule 53 of the Federal Rules of Civil Procedure; (2) if this Court determines that Rule 53 applies, Plaintiffs are entitled to discovery and evidentiary hearing prior to the adoption of Dr. Leone's findings; and (3) Dr. Leone's findings are "stale" because circumstances have changed since the

---

[4] The City Defendants note that "[s]ince the Third Report covers" the same period covered by the Second Report, they "do not see a need to have the earlier [Second Report] formally adopted, except to the extent that it is incorporated in the Third Report." (Third Report Mem. at 1.)

[5] Plaintiffs also object to the City Defendants' submission of a declaration in support of their motion that contains factual findings outside of the Third Report. (*See* Third Report Opp'n at 10 (citing Decl. of Tonya Threadgill dated Dec. 18, 2018, ECF No. 295).) However, because this Court does not rely upon that declaration in deciding this motion, it need not address Plaintiffs' objections to the declaration.

7

Third Report was issued. (Third Report Opp'n at 3.) However, none of Plaintiffs' arguments provides a basis for this Court to reject the factual findings in the Third Report.

## A. Dr. Leone's Role as a Monitor

Plaintiffs assert that "Dr. Leone is not a ... Special Master" under Rule 53 of the Federal Rules of Civil Procedure. (*Id.*) Rather, he "functions as a court-appointed monitor or an ... expert" appointed pursuant to Rule 706 of the Federal Rules of Evidence. (*Id.*) Thus, Plaintiffs argue, Defendants' motion is "improper[]" because Dr. Leone's "findings are not subject to Rule 53 'confirmation.'" (*Id.* at 2, 4.)

But even if Dr. Leone is to be considered a court-appointed monitor or an expert, rather than a Rule 53 Special Master, Plaintiffs offer no explanation as to why that distinction prevents this Court from adopting Dr. Leone's factual findings. Indeed, Judge Motley's decision imposing the 2002 Injunction indicates that this Court has the authority to do so. In that decision, Judge Motley noted that a "court-appointed monitor, Dr. Sher Meisel, issued" a report on December 5, 2001 that "detail[ed] her observations regarding the provision of educational services on Rikers Island."[6] *Handberry I*, 219 F. Supp. 2d at 532. Like Dr. Leone, Dr. Meisel made findings based on "numerous site visits ... , interviews with inmates, consultations with [DOE] and DOC employees and administrators, and an examination of [DOE] and DOC documents as well as submissions of the parties." *Id.*; (*see also* Third Report at 3–4 (noting that Dr. Leone "visited Rikers Island seven times for a total of 16 days" and "observed classroom instruction and

---

[6] In the 2002 Injunction, Judge Motley reappointed Dr. Meisel to serve as a monitor for a two-year period on terms substantially identical to those in the 2016 Order appointing Dr. Leone. (*Compare Handberry v. Thompson*, 219 F. Supp. 2d 525, 551 (S.D.N.Y. 2002) ("The monitor will assess the City [D]efendants' compliance with this order and provide the court and counsel with semi-annual reports specifically identifying any areas of noncompliance. ... The monitor in her report may also recommend specific changes in BOE and DOC policies and procedures."), *with* 2016 Order ¶ 6 (containing substantial identical language quoted above.)

8

interviewed administrators, teachers, [DOE] and DOC support staff, and students" and reviewed various documents).) Judge Motley "decline[d] [P]laintiffs' initial invitation to a wholesale adoption of [Dr. Meisel's] Report" but "adopt[ed] specific factual findings contained in the Report . . . which have been uncontroverted by the City [D]efendants' submissions" and "disregard[ed] [Dr. Meisel's] legal conclusions." *Handberry I*, 219 F. Supp. 2d at 532. On appeal, the Second Circuit found that Dr. Meisel was not a "special master" because she "ha[d] not been given a mandate to exercise quasi-judicial powers." *Handberry II*, 446 F.3d at 352. However, the Second Circuit did not reverse the portion of Judge Motley's decision adopting Dr. Meisel's findings and did not state or imply that Judge Motley lacked the authority to do so.

Plaintiffs' concern that this Court's adoption of Dr. Leone's findings will "improperly elevate Dr. Leone's Reports to that of a Special Master" is unwarranted. (Third Report Opp'n at 3.) This Court will not simply defer to Dr. Leone's findings or otherwise review those findings pursuant to Rule 53. Instead, like Judge Motley, this Court will adopt only "specific factual findings" in the Third Report" that are "uncontroverted" by Plaintiffs' objections and will "disregard [Dr. Leone's] legal conclusions." *Handberry I*, 219 F. Supp. 2d at 532.

### B. Plaintiffs' Request for Discovery and a Hearing

Plaintiffs argue that "this Court should afford Plaintiffs an opportunity to obtain discovery and . . . receive evidence at an evidentiary hearing" or "resubmit the Third Report to Dr. Leone and instruct him to supplement his findings." (Third Report Opp'n at 7 (citing Fed. R. Civ. P. 53(f).) But Plaintiffs rely solely on Rule 53 to support their argument. As explained above, this Court is not reviewing the Third Report pursuant to Rule 53. Moreover, even if this Court were to apply Rule 53, Plaintiffs would not be entitled to discovery, an evidentiary hearing, or an order resubmitting the Third Report to Dr. Leone for further findings. Rule 53 provides, in part, that

"[i]n acting on a master's . . . report, . . . the court must give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(f)(1). Here, Defendants' motion provided Plaintiffs with notice of Defendants' request that this Court adopt Dr. Leone's findings, and Plaintiffs were given an opportunity to be heard by submitting an opposition to that motion. While Rule 53 states that a court "*may* receive evidence" and "*may* . . . resubmit [a report] to the master with instructions," it does not require that a court do so. *Id.*

## C. Changes in Circumstances

Plaintiffs contend that this Court should not adopt the findings in the Third Report because "all of Dr. Leone's findings concerning [Adolescent Inmates] are now moot due to changed circumstances." (Third Report Opp'n at 8.) Plaintiffs explain that "[s]ince Dr. Leone issued his Third Report, all [Adolescent Inmates] have been transferred off [of] Rikers Island and now reside in a new type of facility currently operated jointly by the [DOC] and Administration for Children's Services." (*Id.*) For similar reasons, Plaintiffs also contend that this Court should not adopt Dr. Leone's findings as to Adult Inmates. Plaintiffs assert that those findings are "stale" because "[d]uring the time Dr. Leone gathered facts, [Adult Inmates] were concentrated at the George Motchan Detention Center ('GMDC') on Rikers Island," but "after Dr. Leone's [Third] [R]eport, DOC closed GMDC and substantially revised its approach to young adult housing." (*Id.* at 9.)

However, the 2016 Order appointed Dr. Leone to "assess the DOE and DOC's compliance with this Order" and "provide . . . semi-annual reports" during the "two-year term from the date of th[e] Order." (2016 Order ¶ 6.) The two-year term ended on March 31, 2018. (*See id.*) The events that Plaintiffs identify—the closure of GMDC and transfer of inmates off of Rikers Island—occurred in June and October 2018, respectively. (*See* Opp'n to Termination at 1–2.) The fact

10

that such events occurred after Dr. Leone's two-year term ended does not provide a basis for this Court to reject the findings in the Third Report pertaining to that two-year term as inaccurate.

### III.   PLAINTIFFS' SPECIFIC OBJECTIONS ARE OVERRULED

Defendants seek confirmation of Dr. Leone's findings as to Adolescent Inmates and the DOE pertaining to all paragraphs of the Order, and as to the City Defendants pertaining to paragraph three.

#### A. Paragraph One

Paragraph one of the 2016 Order provides, "All eligible inmates shall be provided a minimum of 3 hours of educational services every school day." In the Third Report, Dr. Leone found that "[Adolescent Inmates] receive an average of five hours of education services each day" and "[s]ome [Adult Inmates] receive an average of three hours of education services each day." (Third Report at 2.) Accordingly, Dr. Leone found the DOC and DOE in "partial compliance" with paragraph one. (*Id.* at 4.) The City Defendants seek confirmation of Dr. Leone's findings as to sixteen- and seventeen-year-old inmates and as to the DOE. (*See* Third Report Mem. at 11, 17.) Plaintiffs do not object to those findings. Thus, this Court adopts Dr. Leone's factual findings as to Adolescent Inmates and the DOE pertaining to paragraph one of the 2016 Order.

#### B. Paragraph Two

Paragraph two of the 2016 Order provides that "[p]lacement in a restrictive housing unit does not change an eligible inmate's entitlement to educational services" under the Order. In the Third Report, Dr. Leone found that "[Adolescent Inmates] in restrictive housing on average receive more than three hours of instruction each day" but "[Adult Inmates] in restrictive housing do not receive three hours of instruction each day." (Third Report at 2.) Dr. Leone therefore found the DOC and DOE in "partial compliance" with paragraph two. (Third Report at 11.)

Defendants seek confirmation of Dr. Leone's factual findings with respect to Adolescent Inmates and the DOE. (*See* Third Report at 11–13, 18.) Plaintiffs argue that Dr. Leone's "findings with respect to [A]dolescent[] [Inmates] must be rejected, because the Reports are devoid of facts concerning [the] City Defendants' educational practices in adolescent restrictive housing units." (Objs. at 4.) However, in the Third Report, Dr. Leone explains that his findings are based, in part, on his observations of classes during "site visits in 2017 and 2018" in which he "observe[d] classes in the RNDC Annex for youth in three restrictive housing units: the . . . Transitional Restorative Unit[], the mental observation unit, and protective custody."[7] (Third Report at 8.) Based upon these observations, Dr. Leone concluded that students in the RNDC Annex, where male Adolescent Inmates in protective custody attend school, (*see* Second Report at 8), "receive education services and attend school in regular classrooms that are similar to those used by other students with the exception of additional DOC staff in the classrooms." (Third Report at 8.) Plaintiffs contend that Dr. Leone's conclusion is not supported by sufficient "factual data." (Objs. at 5.) In particular, Plaintiffs assert that Dr. Leone does not state "what classes [he] attended, what information he derived from [his] visits, or how that information supports his substantial compliance finding," and does not indicate "whether he interviewed students or reviewed records." (*Id.*) But the 2016 Order does not require Dr. Leone to provide any specific information to support his findings, and Plaintiffs do not argue that Dr. Leone's findings are inaccurate. Because the arguments Plaintiffs raise do not constitute grounds to reject Dr. Leone's findings, this Court

---

[7] Plaintiffs note that Dr. Leone does not mention a fourth restrictive housing unit—the Second Chance Housing Unit ("SCHU")—by name. (Objs. at 4.) However, earlier in his Third Report, Dr. Leone notes that he "observed instruction in *all classes* when [he] visited facilities." (Third Report at 5.) Moreover, Plaintiffs do not contend that the educational services in the SCHU differed from services in the other restrictive housing units that are mentioned by name in the Third Report.

12

adopts Dr. Leone's factual findings as to Adolescent Inmates and the DOE pertaining to paragraph two of the 2016 Order.

## C. Paragraph Three

Paragraph three of the 2016 Order provides that "[u]nless stated explicitly to the contrary, any and all requirements set forth in [the 2016] Order shall apply to all of the schools, educational programs, and methods of instruction operated by the [DOE] in [DOC] facilities." Dr. Leone found that the "DOC and DOE are in substantial compliance with this provision." (Third Report at 12.) Plaintiffs argue that "the facts revealed by the [Third] Report[] . . . preclude a finding of substantial compliance." (Objs. at 6.) However, none of the facts that Plaintiffs identify provide a basis to reject Dr. Leone's findings.

First, Plaintiffs point to Dr. Leone's discussion of five Adult Inmates who did not receive education while housed at the North Infirmary Command ("NIC"). (*Id.* at 7.) In the Third Report, Dr. Leone states that the students did not receive education because, "[a]ccording to staff, all had indicated that they were not interested in participating in the education program." (Third Report at 11.) Plaintiffs contend that "[t]he omission of any information indicating that Dr. Leone verified the proffered reason that five students missed education . . . undermines any conclusion that [the DOC or DOE] is in substantial compliance." (Objs. at 7.) But the 2016 Order does not require Dr. Leone to take any particular steps in conducting his investigation. Moreover, Plaintiffs have not identified any information suggesting that the proffered reason was inaccurate or warranted further inquiry. Plaintiffs' subjective belief that Dr. Leone should have undertaken further investigation does not provide this Court with grounds to reject his findings.

Second, Plaintiffs cite Dr. Leone's statement that "between December 1, 2016 and April 1, 2017, 37 inmates from borough detention centers requested school services and 11 who remained

13

in DOC custody were transferred to jails with education programs at Rikers Island." (Third Report at 12.) Plaintiffs assert this statement provides "no cogent explanation of why 70% of prospective students who had in fact requested education were not provided with it." (Objs. at 7.) However, Plaintiffs' assertion is belied by their acknowledgment that the statement "implie[s] that some of those 26 students left [DOC] custody." (*Id.*) While Dr. Leone does not indicate how many of the thirty-seven inmates left DOC custody, his reference to "11 who remained in DOC custody" suggests that the twenty-six other inmates did *not* remain in DOC custody. (Third Report at 12.) Even if all twenty-six inmates remained in DOC custody but were not transferred to jails with education programs, that would not, in itself, invalidate Dr. Leone's finding of substantial compliance. In making that finding, Dr. Leone expressly acknowledges that "[f]ailure to place eligible inmates in jails with services occurs," but concludes that it is "not a systematic problem." (*Id.*)

Third, Plaintiffs highlight Dr. Leone's reference to a student who did not receive educational services while at the West Facility. However, while the Third Report states that the student "did not receive education for several months," it also notes that the student "was subsequently transferred to a unit with a school program." (Third Report at 11.) The fact that the student was ultimately transferred to a unit where he could receive educational services supports, rather than undermines, Dr. Leone's finding that the City Defendants are in substantial compliance with paragraph three.

Because the objections that Plaintiffs raise do not warrant the rejection of Dr. Leone's findings, this Court overrules Plaintiffs' objections and adopts Dr. Leone's factual findings as to the DOC and DOE pertaining to paragraph three of the 2016 Order.

14

### D. Paragraph Four

Paragraph four of the 2016 Order provides, "DOC shall ensure that each eligible inmate is provided access to educational services consistent with this Order in a timely manner, including if necessary providing escorts for travel to and from his or her place of educational instruction." In the Third Report, Dr. Leone found that "the DOC and DOE are in partial compliance on this item" because "while access to school has improved, it is inconsistent." (Third Report at 13.) Dr. Leone explained that "inmates [he] interviewed . . . reported that on some school days, escorts did not come to their units to take them to school or arrived more than an hour after the scheduled start of school" and that "[o]n other units, staff reported incorrectly that school had been cancelled on days [Dr. Leone] visited when, in fact, school was in session." (*Id.*) Plaintiffs do not object to these findings. Therefore, this Court adopts the factual findings as to Adolescent Inmates and the DOE pertaining to paragraph four of the 2016 Order.[8]

### E. Paragraph Five

Paragraph five of the 2016 Order states that "[i]nmates who are disabled and identified as in need for special education or related services shall receive such services." Paragraph five further states that, "[i]f necessary, an Individualized Education Plan ('IEP') or Special Education Plan ('SEP') may be modified . . . consistent with legitimate penal objectives" and "such modifications shall be the least restrictive necessary to accommodate the security needs of the jail." In his Third Report,

---

[8] The City Defendants claim that paragraph four of the 2016 Order "falls squarely within DOC's purview alone," (Third Report Mem. at 18.) But that paragraph requires the DOC to ensure that eligible inmates receive "access to educational services consistent with this Order." (2016 Order ¶ 4.) This language implies that if the DOE does not offer the required educational services, the DOC will be unable to comply with paragraph four. The City Defendants also assert that "[s]ince Dr. Leone found that [Adolescent Inmates] received an average of five hours of educational services each school day[,] . . . the City Defendants are in substantial compliance with this provision for [A]dolescent[] [Inmates]." (Third Report Mem. at 14.) However, Dr. Leone did not expressly find that the City Defendants were in substantial compliance with paragraph four. Even if the Third Report could be read to imply such a finding, it would be a legal conclusion. As noted above, this Court will not consider Dr. Leone's legal conclusions on this motion.

15

Dr. Leone finds "[t]he evidence shows that the DOC and DOE are in substantial compliance on this provision." (Third Report at 15.)

The City Defendants seek confirmation of Dr. Leone's factual findings regarding paragraph five as to Adolescent Inmates and the DOE. (*See* Third Report Mem. at 15–16, 18–19.) Plaintiffs do not argue that Dr. Leone's factual findings regarding Paragraph Five are inaccurate. Rather, Plaintiffs contend that Dr. Leone's finding of substantial compliance is a "summar[y] conclu[sion] . . . with virtually no analysis of anything more than a few procedural requirements." (Objs. at 9.) But this contention is undermined by Plaintiffs' acknowledgment that Dr. Leone "review[ed] a random selection of [IEPs] and [SEPs]." (*Id.*) In addition, the Third Report states that Dr. Leone had "discuss[ions] with teachers and counselors" and "interviewed students." (Third Report at 14.) As noted above, the 2016 Order does not require Dr. Leone to provide specific factual information to support his findings.

Plaintiffs also assert that Dr. Leone found "material modifications to IEPs" but did not assess whether the modifications were "legally justified." (Objs. at 9–10.) But the Third Report does not describe any modifications to students' IEPs. Plaintiffs claim that Dr. Leone "finds that on several IEPs, 'several goals' were replaced with 'only one broader goal.'" (*Id.* at 9.) But the Third Report makes clear that Dr. Leone is referring to a difference between IEPs and SEPs, not to changes in students' IEPs. (*See* Third Report at 14–15.) Moreover, Dr. Leone explains that this difference is unsurprising, because "[b]y design, IEPs contain much more detailed information about prior evaluations, student needs, and transition activities than the SEPs." (*Id.* at 14.) Dr. Leone also made further findings that suggest the differences between the IEPs and SEPs were not material. Dr. Leone found the "SEPs were similar to the previously developed IEPs . . . with a couple of exceptions," that the SEPs had "comparable instruction[] in the same academic areas as

16

on the IEPs," and that the SEPs and IEPs "contained nearly identical frequency and intensity of services." (*Id.* at 14–15.)

As with the previous paragraphs, Plaintiffs' objections do not provide grounds to reject Dr. Leone's findings. Therefore, this Court overrules Plaintiffs' objections and adopts Dr. Leone's factual findings as to Adolescent Inmates and the DOE pertaining to paragraph five of the 2016 Order.

## IV. PLAINTIFFS' REQUESTS ARE DENIED WITHOUT PREJUDICE

In their opposition to the City Defendants' motion, Plaintiffs request that this Court "continue the [2016] Order" and "reappoint Dr. Leone for an additional term of two years." (Third Report Opp'n at 3.) Plaintiffs' request that this Court continue the Order is premature. Because the City Defendants have withdrawn their motion for partial termination of the 2016 Order, it remains in effect. Under the terms of the 2016 Order, Dr. Leone's term expired on March 31, 2018. (*See* 2016 Order ¶ 6.) If Plaintiffs believe that the transfer of Adolescent Inmates off of Rikers Island, the closure of GMDC, or other events constitute "material change[s] in circumstances" that warrant Dr. Leone's reappointment, Plaintiffs "may seek modification of th[e] [2016] Order."[9] (*Id.* ¶ 9.) Because Plaintiffs have not sought modification of the 2016 Order and the City Defendants have not responded to Plaintiffs' request that Dr. Leone be reappointed for two years, Plaintiffs' request for Dr. Leone's reappointment is denied without prejudice.[10]

---

[9] Alternatively, if Plaintiffs believe that, due to a change in conditions that occurred after Dr. Leone issued the Third Report, the City Defendants are not in compliance with one or more provisions of the 2016 Order, Plaintiffs "may move to enforce . . . [the 2016] Order under the governing legal standards established by the Federal Rules of Civil Procedure, any relevant statutes, and applicable case law." (2014 Order ¶ 10.)

[10] In their reply brief, the City Defendants state that they "do not object to th[is] Court asking Dr. Leone to do an additional report covering Spring 2019," but do not address Plaintiffs' request that Dr. Leone be reappointed for another two years. (City Defs.' Reply Mem., ECF No. 303, at 3.)

## V.   CONCLUSION

The City Defendants' motion, (ECF No. 293), is GRANTED as to the City Defendants' request that this Court overrule Plaintiffs' objections to the Second and Third Reports. The City Defendants' request that this Court adopt findings in the Third Report is GRANTED to the extent that those findings are factual in nature and uncontroverted by Plaintiffs. However, this Court DENIES the City Defendants' request to the extent that the City Defendants seek review of Dr. Leone's legal conclusions as to whether the City Defendants were in compliance with their obligations under the 2016 Order. Plaintiffs' request that this Court continue the Order and reappoint Dr. Leone, (Third Report Opp'n at 3), is DENIED without prejudice.

The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
       September 27, 2019

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge